**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

**FILED**

**May 19, 2016**

KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NATIONAL FEDERATION OF INDEPENDENT BUSINESS, a California non-profit mutual benefit corporation, | ) )<br>)<br>)<br>) |
| TEXAS ASSOCIATION OF BUSINESS, a Texas non-profit organization, | )<br>)<br>) |
| LUBBOCK CHAMBER OF COMMERCE, a Texas non-profit organization | )<br>)<br>)<br>) |
| NATIONAL ASSOCIATION OF HOME BUILDERS, a Nevada non-profit corporation, and | )<br>)<br>)<br>) |
| TEXAS ASSOCIATION OF BUILDERS, a Texas non-profit organization, | )<br>)<br>) |
| Plaintiffs | )<br>) |
| and | )<br>) |
| STATE OF TEXAS<br>STATE OF ARKANSAS<br>STATE OF ALABAMA<br>STATE OF INDIANA<br>Attorney General Bill Schuette on<br>  behalf of the PEOPLE OF MICHIGAN<br>STATE OF OKLAHOMA<br>STATE OF SOUTH CAROLINA<br>STATE OF UTAH<br>STATE OF WEST VIRGINIA<br>STATE OF WISCONSIN | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Intervenor-Plaintiffs, | )<br>) |
| v. | ) CIVIL ACTION NO. 5:16-cv-00066-C<br>) |
| THOMAS E. PEREZ, in his official | ) |

capacity, Secretary, United States )
Department of Labor, )
                                   )
MICHAEL J. HAYES, in his official )
capacity, Director, Office of Labor- )
Management Standards, United States )
Department of Labor, and )
                                   )
UNITED STATES DEPARTMENT )
OF LABOR )
                                   )
                  Defendants. )

## COMPLAINT IN INTERVENTION AND
## APPLICATION FOR PRELIMINARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

The State of Texas, State of Arkansas, State of Alabama, State of Indiana, Attorney General Bill Schuette on behalf of the People of Michigan, State of Oklahoma, State of South Carolina, State of Utah, State of West Virginia, and State of Wisconsin (collectively "States") seek declaratory and injunctive relief against Thomas E. Perez, in his official capacity, Secretary, United States Department of Labor, Michael J. Hayes, in his official capacity, Director, Office of Labor-Management Standards, United States Department of Labor, and the United States Department of Labor (collectively "Defendants"), regarding Defendants' promulgation and enforcement of a new interpretation ("Interpretation") and Final Rule regarding the Advice Exemption contained in the Labor-Management Reporting and Disclosure Act of 1959 ("LMDRA"), codified at 29 U.S.C. § 401 *et. seq*. Defendants' new Interpretation and Final Rule is without Congressional authorization, not

entitled to *Chevron*-deference, and arbitrary and capricious in that it, *inter alia*, commandeers from States the right to regulate the practice of law within their borders, and undermines the ability of the States to preserve the integrity of the legal and judicial system which is critical to the States' form of government.

## I. PARTIES

1. Intervenor-Plaintiff States ("States") are the State of Texas, State of Arkansas, State of Alabama, State of Indiana, Attorney General Bill Schuette on behalf of the People of Michigan, State of Oklahoma, State of South Carolina, State of Utah, State of West Virginia, and State of Wisconsin.

2. Plaintiffs are as described in the Complaint for Declaratory Relief and Application for Preliminary Injunction and Permanent Injunction. ECF No. 1 at ¶¶ 4–9.

3. Defendants are as described in the Complaint for Declaratory Relief and Application for Preliminary Injunction and Permanent Injunction. ECF No. 1 at ¶¶ 10–12.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this suit concerns the constitutionality of the new Interpretation and Final Rule as exceeding powers granted by Congress and, thus, violating the Tenth Amendment. This Court also has jurisdiction to compel Defendants to perform their duties pursuant to 28 U.S.C. § 1361.

5. The States' claims for declaratory and injunctive relief are authorized

by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6.      Venue is proper under 28 U.S.C. § 1391(e)(1)(B) because a United States agency and two of its officers in their official capacity are Defendants, and because Defendants' new Interpretation and Final Rule applies in the Northern District of Texas where attorneys licensed by the States practice law.

## III. FACTUAL BACKGROUND

### A.      States Regulate the Practice of Law.

7.      Regulating the practice of law has long been the province of the States. Indeed, "[t]he State has a vital interest in the regulation of the practice of law for the benefit and protection of the people as a whole." *Hexter Title & Abstract Co. v. Grievance Comm.*, 179 S.W.2d 946, 948 (Tex. 1944). *See also Sperry v. State of Fla. ex rel. Fla. Bar*, 373 U.S. 379, 383 (1963) ("Florida has a substantial interest in regulating the practice of law within the State"); *Am. Bar Ass'n v. F.T.C.*, 430 F.3d 457, 472 (D.C. Cir. 2005) ("The states have regulated the practice of law throughout the history of the country; the federal government has not.").

8.      Following the example set by the Framers, all States have set themselves to maintaining three co-ordinate branches of government: executive, legislative, and judicial.

9.      Inherent within each branch of government are certain powers. And the judicial branch possesses the inherent power to properly govern and administer that for which it is responsible. *Degen v. United States*, 517 U.S. 820, 823 (1996) ("Courts

invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities.").

> It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others. For this reason, Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
>
> Prior cases have outlined the scope of the inherent power of the federal courts. For example, the Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it. While this power ought to be exercised with great caution, it is nevertheless incidental to all Courts.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal citations and quotation marks omitted).

> In addition to the express grants of judicial power to each court, there are other powers which courts may exercise though not expressly authorized or described by constitution or statute. These powers are woven into the fabric of the constitution by virtue of their origin in the common law and the mandate of Tex. Const. Art. II, Sec. 1, of the separation of powers between three co-equal branches. They are categorized as "implied" and "inherent" powers, though some courts have also used the terms incidental, correlative and inferred.
>
> . . .
>
> The Inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence

and integrity. Inherent power of the courts has existed since the days of the Inns of Court in common law English jurisprudence. It also springs from the doctrine of separation of powers between the three governmental branches. This power exists to enable our courts to effectively perform their judicial functions and to protect their dignity, independence and integrity.

*Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (citations and footnote omitted).

10.     The inherent power of the judiciary includes the regulating and maintaining the integrity of the practice of law and the various requirements, duties, rules, and other requirements associated therewith—principles that are embraced by all States. *See, e.g.*, *UPLC v. Am. Home Assur. Co., Inc.*, 261 S.W.3d 24, 33 (Tex. 2008); *Preston v. Stoops*, 285 S.W.3d 606, 609 (Ark. 2008); *Ex parte Case*, 925 So. 2d 956, 962–63 (Ala. 2005); *In re Murgatroyd*, 741 N.E.2d 719, 721 n.3 (Ind. 2001); *Grievance Adm'r v. Lopatin*, 612 N.W.2d 120, 125 (Mich. 2000); *In re Reinstatement of Mumina*, 225 P.3d 804, 808 (Okla. 2009); *In re Richland Cty. Magis. Ct.*, 699 S.E.2d 161, 164 (S.C. 2010); *McBride v. Utah State Bar*, 242 P.3d 769, 773 (Utah 2010); *State ex rel. Clifford v. W. Va. Office of Disciplinary Counsel*, 745 S.E.2d 225, 231 (W.Va. 2013); *State ex rel. Fiedler v. Wis. Senate*, 454 N.W.2d 770, 773 (Wis. 1990).

11.     Attorneys are officers of the judiciary and its courts. Ensuring their competence and ability to serve the courts in which they appear is long established as the exercise of the judiciary. *Ex parte Garland*, 71 U.S. 333, 378 (1866) ("They are officers of the court, admitted as such by its order, upon evidence of their possessing sufficient legal learning and fair private character.").

12.     To this end, attorneys are subject to various rules, regulations, and

requirements that are unique to them and their profession.

> From its entry the parties become officers of the court, and are responsible to it for professional misconduct. They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court after opportunity to be heard has been afforded. Their admission or their exclusion is not the exercise of a mere ministerial power. It is the exercise of judicial power, and has been so held in numerous cases.

*Garland*, 71 U.S. at 378–79 (citations and footnotes omitted).

13.     Therefore, in that the judicial branch is charged with maintaining the integrity of its proceedings, which includes governing who does and does not appear before, the States and their judicial branches exert control over the practice of law.

**B.     The LMRDA and Congressional Intent.**

14.     The enactment of the LMRDA in 1959 was an initiative by Congress to primarily combat corruption within the labor movement at the time. *Inter alia*, it imposed upon employers certain reporting and disclosure requirements relating to activities with third parties (a.k.a., "persuaders") designed to influence employees regarding their "right to organize and bargain collectively through representatives of their own choosing." 29 U.S.C. § 433(a)(4). The third parties were also required to report their activities with employers. 29 U.S.C. § 433(b).

15.     Under the LMRDA, these third parties are identified as "persuaders." A "persuader" is any person who enters into an "agreement or arrangement with an employer" an object of which is (1) to persuade employees as to the exercise or manner of exercising their collective bargaining rights, or (2) to supply the employer with information regarding certain activities of employees or a labor organization. 29

U.S.C. § 433(b)(1)–(2).

16.     The next several sections of LMRDA were, however, dedicated to preserving the rights of employers to seek and obtain confidential advice, including from attorneys. Indeed, Congress intended that the term "advice" be viewed quite broadly, *see, e.g.,* H.R. Conf. Rep. 86-1147, and it expressed that intent in the statutory language, to wit:

> Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.

29 U.S.C. § 433(c).

> Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) unless he was a party to an agreement or arrangement of the kind described therein.

29 U.S.C. § 433(d).

> Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of any employer as compensation for service as a regular officer, supervisor, or employee of such employer.

29 U.S.C. § 433(e).

> Nothing contained in this section shall be construed as an amendment to, or modification of the rights protected by, Section 8(c) of the National

Labor Relations Act, as amended.

29 U.S.C. § 433(f). Section 8(c) of the National Labor Relations Act ("NLRA") defines

unfair labor practices by unions and employers. It states that:

> The expressing of any views, argument, or opinion [with respect to unionization], or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act [subchapter], if such expression contains no threat of reprisal or force or promise of benefit."

29 U.S.C. § 158(c).

17. And while the above quoted sections of LMRDA and NLRA are more

than sufficient to evidence a Congressional commitment to protect and preserve the

duties of loyalty and confidentiality that are bedrocks of the attorney-client

relationship, and the attorney-client and work-product privileges associated

therewith, LMRDA also expressly provides that "Attorney-Client Communications

[Are] Exempted," as follows:

> Nothing contained in [the LMRDA] shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of this Act any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

29 U.S.C. § 434 (emphasis added). Thus, not only did Congress express its intent to

preserve the integrity of attorney-client relationships, *see*, *e.g.*, Conf. Rep. No. 86-

1147, at 33 (1959), but doing so was also a practical necessity since every report made

under LMRDA would be available to the public. 29 U.S.C. § 435.

## C. Congress Did Not Preempt State Regulation of the Practice of Law in LMRDA.

18.     Congress did not preempt State laws regulating the practice of law in the LMRDA, but the new Interpretation and Final Rule is a regulatory attempt to do just that. Indeed, the legislative history behind the LMRDA indicates that Congress did not intend to preempt State control over the practice of law. Because the intent of Congress guides the preemption inquiry, DOL cannot accomplish by rule the preemption it seeks. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) ("the purpose of Congress is the ultimate touchstone in every pre-emption case").

19.     Moreover, conflict preemption does not apply because the laws of the States do not conflict with the plain language of the LMRDA or Congressional intent, but rather only with DOL's new Interpretation, Final Rule, and regulatory expansion of the LMRDA. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute."). This is made all the more clear by the fact the rule previously in place for over five decades gives full effect to State law, but the new Interpretation and Final Rule functionally supplants those laws.

20.     According to DOL, "the Department believes, contrary to its prior interpretation, that section 203(c) (known as the "advice exemption") does not shield employers and their consultants from reporting agreements in which the consultant has no face-to-face contact with employees but nonetheless engaged in activities behind the scenes (known as indirect persuader activities) where an object is to persuade employees concerning their rights to organize and bargain collectively." 81 Fed. Reg. 15925. But DOL's belief ignores the fact that attorneys that fall within the

ambit of the new Interpretation and Final Rule cannot comply with both the Final Rule and State laws at the same time. Accordingly, the new Interpretation and Final Rule could be valid only if Congress intended to preempt the States' regulation of the practice of law and, in particular, the States' zealous guardianship of the various duties imposed upon all attorneys that they license and admit to practice within their jurisdictions and tribunals.

### D. DOL's Historic Interpretation of the Persuader Rule.

21. The LMRDA authorizes the Secretary to "issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under title and such other reasonable rules and regulations . . . as he may find necessary to prevent the circumvention or evasion of such reporting requirements." 29 U.S.C. § 438. And a regulation's meaning "at the time of [its] promulgation" should control. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

22. For decades now, DOL has interpreted the LMRDA to exclude the need for an attorney-client consultation to be reported, so long as the attorney has no direct contact with employees and the employer is free to accept or reject the attorney's advice or recommendations. This would include, for example, "a lawyer's legal review of actions contemplated by an employer in response to union organizing, including the preparation of documents, speeches and even responses by an employer to questions raised by employees, for an employer's use during union organizing, the training of managers and supervisors through conferences and seminars and otherwise, and the development of personnel policies and practices." ECF No. 1 at

¶ 33.

23.     DOL's longstanding interpretation of the LMRDA's Advice Exemption was established in 1962. LMRDA Interpretative Manual Entry § 265.005 (Jan. 19, 1962); *see* Memorandum of Acting Deputy Assistant Secretary for Labor-Management Standards Mario A. Lauro Jr. (Mar. 24, 1989). Under the traditional rule, an attorney hired by an employer to provide advice regarding union organization or collective bargaining was exempt from LMRDA's reporting requirements so long as the attorney did not communicate directly with employees with regard to union organization or collective bargaining matters.

24.     For decades, courts have followed a like interpretation of Congress's language and worked to preserve attorneys' longstanding duties of loyalty and confidentiality to their clients. "An attorney or consultant who confines himself to giving legal advice . . . would not be included among those required to file reports." *Price v. Wirtz*, 412 F.2d 647, 651 (5th Cir. 1969) (*en banc*) (quoting *Wirtz v. Fowler*, 372 F.2d 315, 327 (5th Cir.1966), *overruled on other grounds*, 412 F.2d at 651). *See Donovan v. Rose Law Firm*, 768 F.2d 964, 972 (8th Cir. 1985) ("It says merely that an attorney who confines himself to giving advice, engaging in collective bargaining, or appearing in court and administrative proceedings is not required to report." (citing S. Rep. 86-187)); *Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1216 (6th Cir. 1985); *Master Printers Ass'n v. Donovan*, 699 F.2d 370 (7th Cir. 1983), *cert. denied*, 464 U.S. 1040 (1984); *Douglas v. Wirtz*, 353 F.2d 30 (4th Cir. 1965), *cert. denied*, 383 U.S. 909 (1966); *Int'l Union, United Auto., Aerospace & Agric. Implement*

*Workers of Am. v. Dole Eyeglasses*, 869 F.2d 616, 620 (D.C. Cir. 1989) (rejecting a challenge to the original interpretation by the DOL at LMRDA Interpretative Manual Entry § 265.005 (Jan. 19, 1962)).

### E.   DOL's New Interpretation and Final Rule.

25.    Congress did not change or amend the LMRDA. Rather, DOL's New Interpretation and Final Rule stems only from what it calls a "lack of transparency." News Release, New U.S. Department of Labor Rule Improves Transparency for Working Considering Union Representation (Mar. 23, 2016). Thus, according to DOL:

> This Final Rule requires that employers and the consultants they hire file reports not only for direct persuader activities – consultants talking to workers – but also for *indirect* persuader activities – consultants scripting what managers and supervisors say to workers.

Overview/Summary, Persuader Agreements: Ensuring Transparency in Reporting For Employers and Labor Relations Consultants, *available online at* http://www.dol.gov/olms/regs/compliance/ecr/Persuader_OverviewSum_508_2.pdf (emphasis added); *see* 81 Fed. Reg. 156925.

26.    As defined by DOL, "indirect" activities occur even in situations when an attorney consults only with their employer-client, and not directly with employees, about organized labor matters. Therefore, the new Interpretation and Final Rule invades, by its very language, confidential communications between an employer-client and its attorney(s), including circumstances where the attorney(s) does not, in any way, communicate directly to employees or employee representatives. This imposes upon an attorney's well-grounded duties of loyalty and confidentiality, and can impair the attorney-client and work-product privileges.

27.     DOL contends that the new Interpretation and Final Rule does not impose upon the attorney-client relationship, to wit:

> Q:     Does this rule require disclosure of information protected by the principle of attorney-client privilege?
>
> A:     No. None of the information required to be reported (*e.g.*, the identity of the parties, terms and conditions of the agreement, and specific persuader activities undertaken) is covered by the attorney-client privilege. Privileged information is excluded from the reporting requirement by statute. The Department took the same basic position with respect to reports required to be filed by unions about their annual expenditures in the Department's 2003 rule, which has been effective since 2005.

Questions & Answers, Persuader Final Rule, Department of Labor, available online at http://www.dol.gov/olms/regs/compliance/ecr/Persuader_QA_508.pdf.

28.     However, without regard to the direct impact upon the attorney-client relationship, DOL simultaneously maintains that 29 U.S.C. § 433(c) "does not shield employers and their consultants from reporting agreements in which the consultant has no face-to-face contact with employees but nonetheless engaged in activities behind the scenes (known as indirect persuader activities) where an object is to persuade employees concerning their rights to organize and bargain collectively." 81 Fed. Reg. 15925. Thus, DOL's new Interpretation and Final Rule, as stated by Plaintiffs, means that "a consultant (including an attorney) hired by an employer will for the first time in fifty years be required to file reports with DOL even if the consultant has no direct dealing with employees." ECF No. 1 at ¶ 41.

29.     This means that the new Interpretation and Final Rule prohibits an employer from *confidentially* seeking the advice and counsel of an attorney when it

comes to the lawful objective of communicating with employees regarding unionization and collective bargaining. And as aptly noted by Plaintiffs, myriad activities and communications that previously fell within the comfortable ambit of the attorney-client relationship and privilege now receive a prominent public spotlight. ECF No. 1 at ¶¶ 42-43.

### F. The New Rule Harms the States and Attorneys.

30.     Unlike a non-attorney labor consultants, attorneys are members of a profession that is both regulated by the state and subject to disciplinary authority in matters of professional conduct, which imposes on him or her a duty of confidentiality. DOL ignores this distinction, contending that there is no "persuasive argument that the 'soup to nuts' persuader services offered by attorneys should be shielded from employees and the public while the very same activities would be reported by their non-attorney colleagues in the union avoidance industry." 81 Fed. Reg. 15992.

31.     Moreover, the new Interpretation and Final Rule takes the organic and fluid relationship between attorney and client and seeks to artificially parse it into non-existent component parts, to wit: "attorneys who restrict their activities to legal services are not required to file any report; only those attorneys who engage in persuader services are required to file a report." 81 Fed. Reg. 15993. But as noted by myriad experts, DOL's crafty effort to separate the inseparable can only have the effect of chilling candid and productive attorney-client communications which make the justice system work.

32.     As noted by the Supreme Court:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Thus, the federal courts regularly protect from disclosure the communications from attorneys to clients. *See*, *e.g.*, *Garner v. Wolfinbarger*, 430 F.2d 1093, 1096 n.7 (5th Cir. 1970) (citing *8 in 1 Pet Prod., Inc. v. Swift & Co.*, 218 F. Supp. 253 (S.D.N.Y. 1963); 8 Wigmore, Evidence, § 2320 at 628 (McNaughton rev. 1961)); *Natta v. Hogan*, 392 F.2d 686, 692-93 (10th Cir. 1968); *Schwimmer v. United States*, 232 F.2d 855, 863 (8th Cir. 1956).

33.     The broadest approach to the attorney-client privilege protects *all communications* between the attorney and client, regardless of whether those communications reveal confidences. *See*, *e.g.*, *United States v. Amerada Hess Corp.*, 619 F.2d 980, 986 (3d Cir. 1980); 8 J. Wigmore, Evidence § 2320 at 628 (McNaughton Rev. 1961). Thus, the mere existence of the attorney-client relationship, including "the identity of the parties," or the "terms and conditions of the agreement," may be privileged. *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir. 1971) ("Under certain circumstances, an attorney must conceal even the identity of a client, not merely his communications, from inquiry."); Cal. Bus. & Prof. Code § 6149 ("A written fee contract shall be deemed to be a confidential communication within the meaning of subdivision (e) of Section 6068 and of Section 952 of the Evidence Code."). However, DOL concludes, without exception, that "the fact of legal consultation,

clients' identities, attorney's fees, and the scope and nature of the employment are not deemed privileged." 81 Fed. Reg. 15991. But requiring disclosure of the "specific persuader activities undertaken" between an attorney and client invades the shroud of confidentiality that is to cover an employer-client's consultation with their attorney(s), even regarding union and collective bargaining matters that DOL labels "persuader activities."

34.    By functionally re-authoring the States' longstanding rules and interpretations of the duties and privileges appurtenant to the attorney-client relationship, DOL's new Interpretation and Final Rule places an enormous burden on attorneys to functionally tip-toe (if at all possible) between historic, longstanding principles of privilege and confidentiality (on the one hand), and DOL's new Interpretation and Final Rule (on the other hand)—all without the final guidance of any Court or State authority. This leaves attorneys in the precarious position to decide issues that are judicially unsettled, and they are forced to do so possibly to the detriment of their clients, thereby also placing into the crosshairs of DOL's new Interpretation and Final Rule the universal duty of loyalty, which is "all-important." *U.S. v. Trevino*, 992 F.2d 64, 64 (5th Cir. 1993); Model Rules of Prof'l Conduct R. 1.7 cmt. DOL doesn't even mention the duty of loyalty in its 129 pages of the new Interpretation and Final Rule. *See* 81 Fed. Reg. 15924–16051.

35.    DOL's new Interpretation and Final Rule prevents State officials from applying State law. The Rule prevents implementation and enforcement of the will of the people of the States, thereby inflicting irreparable injury. *See New Motor*

*Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, Circuit Justice) ("[A]ny time a State is enjoined by a Court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Planned Parenthood of Greater Texas Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people . . . is enjoined.").

## IV. CLAIMS FOR RELIEF

### COUNT ONE

**Declaratory Judgment Under the Administrative Procedure Act,
5 U.S.C. § 706, that the New Interpretation and Final Rule Is Unlawful –
Congress Did Not Preempt State Law.**

36.　　The allegations in paragraphs 1 through 35 are reincorporated herein.

37.　　DOL's new Interpretation and Final Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

38.　　The APA requires the Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

39.     The new Interpretation and Final Rule illegally attempts to preempt State law because historic powers reserved to the States, such as regulating the practice of law, cannot be superseded by federal act, "unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *see also Wyeth*, 555 U.S. at 565; *Gregory v. Ashcroft*, 501 U.S. 452, 460-70 (1991). Congress expressed its clear and manifest purpose in the LMRDA to exclude from the reporting and disclosure requirements the advice from and consultations with attorneys. 29 U.S.C. § 433(b)–(e); 29 U.S.C. § 434.

40.     Because DOL's new Interpretation and Final Rule is not in accordance with the law as articulated above, it is unlawful, violates 5 U.S.C. § 706, and should be set aside.

### COUNT TWO

### Declaratory Judgment Under the Administrative Procedure Act, 5 U.S.C. § 706, that the new Interpretation and Final Rule Is Unlawful for Violating the Tenth Amendment.

41.     The allegations in paragraphs 1 through 40 are reincorporated herein.

42.     DOL's new Interpretation and Final Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

43.     The APA requires the Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or

short of statutory right." 5 U.S.C. § 706(2).

44.     The new Interpretation and Final Rule violate the Tenth Amendment by effectively commandeering the States' regulation of the practice of law.

45.     Because the new Interpretation and Final Rule is not in accordance with the law articulated above, it is unlawful, violates 5 U.S.C. § 706, and should be set aside.

## COUNT THREE

### Declaratory Judgment Under 5 U.S.C. § 706 that the New Interpretation and Final Rule Is Arbitrary and Capricious.

46.     The allegations in paragraphs 1 through 45 are reincorporated herein.

47.     DOL's new Interpretation and Final Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

48.     The APA requires the Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

49.     In adoption of the new Interpretation and Final Rule, DOL did not consider Congress's clear expression that the reporting and disclosure requirements established by LMRDA were not intended to interfere with the States' control over the practice of law, or the right and ability of employer-clients to have full confidentiality when consulting with their attorneys. *See*, *e.g.*, Conf. Rep. No. 86-

1147, at 33 (1959). DOL cannot rewrite LMRDA's scope of the reporting and disclosure requirements established by the statute. *Neinast v. Texas*, 217 F.3d 275, 281 (5th Cir. 2000) ("[O]ur operating premise must be that an agency . . . cannot have greater power to regulate state conduct than does Congress."). DOL's actions are arbitrary and capricious.

## COUNT FOUR

### Declaratory Judgment Under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. § 706 that the Agency Action Is Contrary to Constitutional Right and in Excess of Statutory Authority

50.     The allegations in paragraphs 1 through 49 are reincorporated herein.

51.     DOL's new Interpretation and Final Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

52.     The APA requires the Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

53.     DOL's new Interpretation and Final Rule is beyond its lawful authority, and thus not entitled to *Chevron* deference. When analyzing an agency interpretation of a statute, courts apply the two-step framework of determining whether the statute is ambiguous and, if so, if the agency's interpretation is reasonable. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The theory is that

a statutory ambiguity is an implicit delegation, but questions of "deep 'economic and political significance'" are exceptions to the delegation rule. *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014)).

54. First, LMRDA is not ambiguous as to whether confidential communications between employer-clients and their attorney(s) must be reported or otherwise disclosed. Nothing in the language of LMRDA itself indicates or implies that communications must be disclosed, especially when those communications are "indirect" and conducted within the confines of the attorney-client setting.

55. Second, DOL's new Interpretation and Final Rule places into legal jeopardy the integrity of attorney-client relationships and the importance of the duties of confidentiality and loyalty that are hallmarks of the legal profession and the States' systems of justice. These impacts of DOL's new Interpretation and Final Rule are questions of deep economic and political significance Congress would not have delegated to DOL apart from an express grant of authority.

## V.    DEMAND FOR JUDGMENT

56. Plaintiffs respectfully request the following relief from the Court:

57. A declaratory judgment that the new Interpretation and Final Rule is substantively unlawful under the APA;

58. Setting aside the new Interpretation and Final Rule under the APA because it is substantively unlawful;

59.     A declaratory judgment that the new Interpretation and Final Rule is invalid because it is arbitrary and capricious;

60.     Temporary relief, enjoining the new Interpretation and Final Rule;

61.     A final, permanent injunction preventing the DOL from further implementing and/or enforcing the new Interpretation and Final Rule; and

62.     All other relief to which the States may show themselves to be entitled.

## VI.     APPLICATION FOR PRELIMINARY INJUNCTION

63.     The Intervenor-Plaintiff States seek a preliminary injunction pursuant to Federal Rule of Civil Procedure Rule 65. In particular, the States request the Court to enjoin and/or stay the application of the new Interpretation and Final Rule.

64.     To obtain a preliminary injunction, the States must show:

A.      there is a substantial likelihood that the States will prevail on the merits;

B.      there is a substantial threat that irreparable injury will result if the injunction is not granted;

C.      the threatened injury outweighs the threatened harm to the Defendants; and

D.      granting the preliminary injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *Canal Auth. of Fla. v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974).

## <u>Substantial likelihood that the States will prevail</u>

65.     For the reasons articulated in paragraphs 1 through 64, *supra*, the States have met their burden to show a substantial likelihood that they will prevail on their claims that the DOL's new Interpretation and Final Rule is invalid.

### **Substantial threat that irreparable injury will result**

66.     The States have no adequate remedy at law to contest the application of the Final Rule. By forcing state officials, through the rules of ethics and professional conduct that they administer, to choose between a federal rule or complying with State law, the Rule causes an irreparable injury. *See Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws."); *Wilson*, 122 F.3d at 719 ("[I]t is clear that a state suffers irreparable injury whenever an enactment of its people . . . is enjoined.").

67.     Moreover, now that the DOL's new Interpretation and Final Rule is in effect, attorneys must research the full history and agency guidance associated with the new Interpretation and Final Rule, regularly comparing and contrasting it against state law regarding confidentiality and privilege, and navigating several irreconcilable conflicts. The Interventor-Plaintiff States have laws and rules that prohibit violations of duties, or various evidentiary privileges that belong to their clients. Thus, the new Interpretation and Final Rule places an enormous burden on both attorneys and State officials to approve or disapprove certain attorney behavior that may comply with a federal rule, but not the state rule, or vice versa.

68.     Perhaps most importantly, confidentiality and privilege are hallmarks of the legal profession. *Engel v. CBS, Inc.*, 145 F.3d 499, 504 (2d Cir. 1998) ("the ability to zealously represent one's client with undivided loyalty is the cornerstone of the legal profession"); *Ga. State Bd. of Pharm. v. Lovvorn*, 336 S.E.2d 238, 241 (Ga.

1985) ("It is a proud hallmark of the legal profession that an attorney owes undivided loyalty to his client-undiluted by conflicting or contrariant obligations, and undiminished by interests of himself or of others.").

> [W]hether it be Texas, California, or New York law, each state recognizes a privilege for communications between attorneys and their clients as well as communications made in anticipation of litigation. *See* Cal. Evid. Code §§ 950 et seq. (West 1995 & Supp. 2002); Cal. Code Civ. P. § 2018 (West 1998); N.Y. C.P.L.R. § 4503(a) (Consol. 1992); N.Y. C.P.L.R. § 3101(c) (Consol. 1991 & Supp. 2002); Tex. R. Evid. 503; Tex. R. Civ. P. 192.5. The purpose of the attorney-client privilege is to protect the confidential relationship between attorney and client and to promote full and open disclosure of facts so that the attorney can best represent his client. *See Mitchell v. Superior Court*, 37 Cal.3d 591, 208 Cal.Rptr. 886, 691 P.2d 642, 645–46 (Cal. 1984); *Tekni–Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663, 671 (N.Y. 1996); *Md. Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982).

*In re Union Carbide Corp.*, 2003 WL 22682301, at *4 (Tex. App.—Houston [1st Dist.] 2003, no pet. history). And as stated by the California Supreme Court:

> The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. (McCormick, Evidence (2d ed. 1972) § 87, pp. 175–179; 8 Wigmore, Evidence (McNaughton rev., 1961) § 2290, pp. 542–545; *Prichard v. U.S.* (6th Cir. 1950) 181 F.2d 326, 328, affd. (1950) 339 U.S. 974, 70 S. Ct. 1029, 94 L. Ed. 1380; *Baird v. Koerner* (9th Cir. 1960) 279 F.2d 623, 629.) The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid. Code, § 950 et seq.) Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. (*People v. Flores* (1977) 71 Cal.App.3d 559, 563, 139 Cal.Rptr. 546.) In other words, the public policy fostered by the privilege seeks to insure "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." (*Baird v. Koerner*, *supra*, 279 F.2d at p. 629.)

> Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." (*City & County of S.F. v. Superior Court* (1951) 37 Cal.2d 227, 235, 231 P.2d 26; accord *People v. Canfield* (1974) 12 Cal.3d 699, 705, 117 Cal.Rptr. 81, 527 P.2d 633.)

*Mitchell v. Super. Ct.*, 691 P.2d 642, 645–46 (Cal. 1984).

69.     The ethical duty of confidentiality is one of the hallmarks of the legal profession and the attorney-client relationship.

> Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed or sought to employ the lawyer. Free discussion should prevail between lawyer and client in order for the lawyer to be fully informed and for the client to obtain the full benefit of the legal system. The ethical obligation of the lawyer to protect the confidential information of the client not only facilitates the proper representation of the client but also encourages potential clients to seek early legal assistance.

Tex. Discipl. R. Prof'l Conduct 1.5 cmt. *See also* Model Rules Prof'l Conduct ("MRPC") 1.6(a). This is because client confidentiality encourages candid communication between the attorney and the client to "thereby promote broader public interests in the observance of the law and administration of justice." *Upjohn*, 449 U.S. at 389. Lawyers that violate a duty of confidentiality may be sanctioned, disbarred, or even sued for malpractice. *See*, *e.g.*, Daniel R. Fischel, Lawyers and Confidentiality, 65 U. Chi. L. Rev. 1, 2 (1998).

70.     "Loyalty to a client is [also] a cornerstone of the legal profession." Tex. Ethics Op. No. 569, 69 Tex. B.J. 787 (Apr. 2006); Eli Wald, Loyalty in Limbo: The

Peculiar Case of Attorneys' Loyalty to Clients, 40 St. Mary's L.J. 909, 923 (2009). In fact, a lawyer's duty of loyalty is perhaps the most fundamental of all duties owed to a client. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (describing the duty of loyalty as "perhaps the most basic of counsel's duties"). The duty of loyalty is recognized in every U.S. jurisdiction and "and codified in every American code of legal ethics ever promulgated." Lawrence Fox, The Gang of Thirty-Three Taking the Wrecking Ball to Client Loyalty, 121 Yale L.J. Online 567, 570 (2012) (citations omitted).

71. Then-Judge Story described the duty of loyalty as follows: "When a client employs an attorney, he has a right to presume, if the latter be silent on the point, that he has no engagements, which interfere, in any degree, with his exclusive devotion to the cause confided to him; that he has no interest, which may betray his judgment, or endanger his fidelity." *Williams v. Reed*, 29 F. Cas. 1386, 1390 (C.C.D. Me. 1824) (No. 17,733). Compelled disclosures, even in extraordinary circumstances, by attorneys will only undermine the doctrines that form the cornerstone of the legal profession.

## Threatened injury outweighs the threatened harm to Defendants

72. The Plaintiff States cannot simultaneously comply with the new Interpretation and Final Rule and with State law demanding that lawyers adhere strictly to loyalty and confidentiality in client dealings.

73. DOL's new Interpretation seeks only to enforce a new preference for disclosure without any real showing that the original interpretation—one that has

stood the test of time for decades—is insufficient or results in any form of manifest injustice. Rather, DOL's new Interpretation and Final Rule is motivated merely by a desire for greater "transparency."

74.     At the other end of the spectrum are foundational prerequisites of the justice system itself, including the attorney-client relationship and its constitutive sacred duties of loyalty and confidentiality. The loss of the integrity of the attorney-client relationship in labor-relations matters can only impair the cause of justice and will functionally bar employers from receiving confidential legal advice.

75.     Moreover, to permit a federal agency to invade some of the most solemn duties of attorneys threatens to undermine the public confidence in attorneys, and our justice system, in grave ways. The harm created by the new Interpretation and Final Rule and its undermining of the attorney-client relationship substantially outweighs DOL's new interpretative preference.

### Preliminary injunction will not disserve the public interest

76.     A preliminary injunction allows the States to carry out the longstanding statutory policy of their legislatures, which "is in itself a declaration of the public interest . . . ." *Va. Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937); *see also Abbott*, 734 F.3d at 419 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws" and when "the State is the appealing party, its interest and harm merges with that of the public.").

77.    Granting the preliminary injunction will restore the status quo—that clients may confidentially consult with their attorneys.

### CONCLUSION AND PRAYER FOR RELIEF

Intervenor-Plaintiff States respectfully request temporary relief, enjoining the new Interpretation and Final Rule, and for all other relief to which they may show themselves to be entitled.

Dated:       May 10, 2016.

Respectfully submitted,

| | |
|---|---|
| LESLIE RUTLEDGE<br>Attorney General of Arkansas | KEN PAXTON<br>Attorney General of Texas |
| LUTHER STRANGE<br>Attorney General of Alabama | JEFFREY C. MATEER<br>First Assistant Attorney General |
| GREG ZOELLER<br>Attorney General of Indiana | BRANTLEY STARR<br>Deputy Attorney General for Legal<br>  Counsel |
| BILL SCHUETTE<br>Attorney General of Michigan | AUSTIN R. NIMOCKS<br>Associate Deputy Attorney General for<br>  Special Litigation |
| SCOTT PRUITT<br>Attorney General of Oklahoma | |
| ALAN WILSON<br>Attorney General of South Carolina | /s/ Austin R. Nimocks<br>AUSTIN R. NIMOCKS<br>Texas Bar No. 24002695 |
| SEAN REYES<br>Attorney General of Utah | Special Litigation Division<br>P.O. Box 12548, Mail Code 001<br>Austin, Texas 78711-2548 |
| PATRICK MORRISEY<br>Attorney General of West Virginia | *ATTORNEYS FOR PLAINTIFF STATES* |
| BRAD SCHIMEL<br>Attorney General of Wisconsin | |

## CERTIFICATE OF SERVICE

I, Austin R. Nimocks, hereby certify that on this the 10th day of May, 2016, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

_/s/ Austin R. Nimocks_
Austin R. Nimocks