IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| NATIONAL FEDERATION OF INDEPENDENT BUSINESS *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 5:16-cv-00066-C |
| v. | ) ) ) | |
| THOMAS E. PEREZ, in his official capacity as Secretary, United States Department of Labor *et al*., | ) ) ) ) ) | |
| Defendants. | ) ) | |

**APPENDIX TO DEFENDANTS' BRIEF IN OPPOSITION TO INTERVENOR-
PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

M. PATRICIA SMITH
Solicitor of Labor

BEVERLY I. DANKOWITZ
Associate Solicitor

CLINTON WOLCOTT
Counsel for Labor-Management Programs

ADAM R. PULVER
Senior Attorney
Civil Rights and Labor-Management Division
U.S. Department of Labor
200 Constitution Ave. N.W., Room N-2474
Washington, D.C. 20210

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JOHN R. PARKER
United States Attorney

ANN HAAG
TAMI C. PARKER
Assistant United States Attorneys

JUDRY L. SUBAR (D.C. Bar)
Assistant Branch Director

DANIEL RIESS (Texas Bar # 24037359)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: 202-353-3098
Daniel.Riess@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

Form LM-10 (Employer Report) ................................................................................ 1

Form LM-20 (Agreement & Activities Report) ........................................................... 5

Relevant Confidentiality-of-Information Code Provisions of Intervenor-States. .......................... 7

House Conference Report No. 86-1147 ..................................................................... 16

**FORM**

# LM-10
# EMPLOYER REPORT

**Office of Labor-Management Standards**
**U.S. Department of Labor**

**OLMS**

OMB No. 1245-0003.  Expires XX-XX-XXXX.

IMPORTANT: This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440.

For Official Use Only

**E**

▶ *Read the instructions carefully before completing this report.* ◀

| 1.a. File Number **E-** | 1.b. ☐ Hardship Exemption | 1.c. ☐ Amended Report | 2. Fiscal Year Covered: _____ through _____ (mm/dd/yyyy)   (mm/dd/yyyy) |
|---|---|---|---|

| 3. Name and address of Reporting Employer (including trade name, if any). | 4. Name of President or corresponding principal officer and address if different from address in Item 3. |
|---|---|
| Employer _____ | Name _____ |
| Attention To (including title) _____ | Title _____ |
| Street _____ | Street _____ |
| City _____ | City _____ |
| State _____ ZIP Code _____ | State _____ ZIP Code _____ |
| Email Address _____ | Email Address _____ |
| Employer Identification Number (EIN) _____ | |

| 5. Any other address where records necessary to verify this report will be available for examination. | 6. Indicate by checking the appropriate box or boxes where records necessary to verify this report will be available for examination. |
|---|---|
| Organization _____ | ☐ Address in Item 3 |
| Street _____ | ☐ Address in Item 4 |
| City _____ | ☐ Address in Item 5 |
| State _____ ZIP Code _____ | **7. Type of organization.** |
| Email Address _____ | ☐ Corporation   ☐ Partnership   ☐ Individual   ☐ Other |
| Contact Name _____ | (specify) _____ |
| Title _____ | |

## Signatures

Each of the undersigned, duly authorized officers of the above employer declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including the information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned's knowledge and belief, true, correct, and complete. *(See Section VIII on penalties in the instructions.)*

18. Signed _____

President (If other title, see instructions.)

19. Signed _____

Treasurer (If other title, see instructions.)

On _____   _____

Date  (mm/dd/yyyy)      Telephone Number

On _____   _____

Date  (mm/dd/yyyy)      Telephone Number

**App. 1**

## PART A – Payments to Unions and Union Officials. Complete Part A if you made, promised or agreed to make, directly or indirectly, any payment or loan of money or other thing of value (including reimbursed expenses) to any labor organization or to any officer, agent, shop steward, or other representative or employee of any labor organization.

8. Name and Title of Recipient/Contact _____   Labor Organization _____

☐ Individual recipient     ☐ Labor organization recipient

Street _____   City _____   State _____   ZIP Code _____

Telephone _____   Email Address _____

| 9.a. Date of each payment. (mm/dd/yyyy) | 9.b. Amount of each payment. | 9.c. Kind of payment. (Specify if payment or loan, and if in cash or property.) | 9.d. Explain fully the circumstances of the payment, including the terms of any oral agreement or understanding pursuant to which it was made. |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |

## PART B – Persuader Payments to Employees and Employee Committees. Complete Part B if you made, directly or indirectly, any payment (including reimbursed expenses) to any of your employees, or to any group or committee of your employees, for the purpose of causing them to persuade other employees to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing unless such payments were contemporaneously or previously disclosed to other employees.

10. Name of Recipient _____

Type of Recipient:   ☐ Employee     ☐ Employee Group/Committee
If you checked "Employee Group/Committee" provide contact name and title: _____

Street _____   City _____   State _____   ZIP Code _____

Telephone _____   Email Address _____

If the address of the group or organization differs from that of the individual recipient of the payment or the contact person for the group or organization, click here:

| 11.a. Date of each payment. (mm/dd/yyyy) | 11.b. Amount of each payment. | 11.c. Kind of payment. (Specify if payment or loan, and if in cash or property.) | 11.d. Explain fully the circumstances of the payment, including the terms of any oral agreement or understanding pursuant to which it was made. |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |

**App. 2**

# PART C – Persuader Agreements/Arrangements with Labor Relations Consultants.

Check the box(es) below and complete Part C if you made any agreement or arrangement with a labor relations consultant or other independent contractor or organization pursuant to which such person or organization undertook activities where an object thereof, directly or indirectly, was to:

☐ Persuade employees to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing.

☐ Furnish you with information concerning activities of employees or of a labor organization in connection with a labor dispute in which you were involved.

12. Name of person with whom (or through) a separate agreement was made _____

Organization _____    Position in Organization _____

Street _____ City _____ State _____ ZIP Code _____

Telephone _____    Email Address _____

Employer Identification Number (EIN) _____

If the address of the consultant or other organization differs from that of the individual with whom the separate agreement was made, click here:

| 13.a. Date of the agreement or arrangement. (mm/dd/yyyy) | 13.b. Terms and conditions.  (Explain in detail; see instructions.  Written agreements must be attached by clicking the "Add Attachments" link at the top of the form.) |
|---|---|
| | |

14. Information regarding activities performed or to be performed by the labor relations consultant pursuant to agreement or arrangement.

14.a. Nature of activities performed or to be performed by the labor relations consultant pursuant to agreement or arrangement:

**PERSUADER ACTIVITIES:**  Select from the following reportable activities those which, per agreement with the consultant(s) named in item 12, have been or will be performed:

☐ Drafting, revising, or providing written materials for presentation, dissemination, or distribution to employees

☐ Drafting, revising, or providing a speech for presentation to employees

☐ Drafting, revising, or providing audiovisual or multi-media presentations for presentation, dissemination, or distribution to employees

☐ Drafting, revising, or providing website content for employees

☐ Planning or conducting individual employee meetings

☐ Planning or conducting group employee meetings

☐ Training supervisors or employer representatives to conduct individual or group employee meetings

☐ Coordinating or directing the activities of supervisors or employer representatives

☐ Establishing or facilitating employee committees

☐ Developing personnel policies or practices

☐ Identifying employees for disciplinary action, reward, or other targeting

☐ Speaking with or otherwise communicating directly with employees

☐ Other

**INFORMATION SUPPLYING ACTIVITIES:**  Select each activity whereby the labor relations consultant supplies you with information concerning the activities of employees or a labor organization in connection with a labor dispute in which you are involved:

☐ Supplying information obtained from:

☐ Research or investigation concerning employees or labor organizations

☐ Supervisors or employer representatives

☐ Employees, employee representatives, or union meetings

☐ Surveillance of employees or union representatives (electronically or in person)

☐ Other

**ADDITIONAL INFORMATION:**

| 14.b. Period during which performed. | 14.c. Extent performed. |
|---|---|
| | |

14.d. Name of person(s) who performed activities _____

Type of Person:   ☐ Employee of Consultant   ☐ Independent Contractor   ☐ Separate Organization

Organization _____    Position in Organization _____

Street _____ City _____ State _____ ZIP Code _____

Telephone _____    Email Address _____    Employer Identification Number (EIN) _____

If the address of the organization differs from the business address of the person who performed the activities, or if more than one person performed the activities, click here:

**PART C – Persuader Agreements/Arrangements with Labor Relations Consultants.** Continued

| 14.e. Identify subject groups of employees. | 14.f. Identify subject labor organizations. |
|---|---|
| | |

[Continuation button]

| 15.a. Date of each payment. (mm/dd/yyyy) | 15.b. Amount of each payment. | 15.c. Kind of payment. (Specify if payment or loan, and if in cash or property.) | 15.d. Explain fully the circumstances of the payment(s), including the terms of any oral agreement or understanding pursuant to which it was made. |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |

**PART D – Expenditures Made to Interfere With, Restrain, or Coerce Employees; Obtain Information Concerning Employees or a Labor Organization.**

Check the box(es) below and complete Part D if you made:

☐ Any expenditure where an object thereof, directly or indirectly, was to interfere with, restrain, or coerce employees in the right to organize and bargain collectively through representatives of their own choosing; or

☐ Any expenditure where an object thereof, directly or indirectly, was to obtain information concerning the activities of employees or of a labor organization in connection with a labor dispute in which you were involved.

16. Name of Recipient _____

Type of Recipient:   ☐ Employee    ☐ Independent Contractor    ☐ Business/Organization

If you checked "Business/Organization," provide contact name and title: _____

Street _____ City_____ State _____ ZIP Code _____

Telephone _____ Email Address _____

If the address of the consultant or other organization differs from that of the individual with whom the separate agreement was made, click here:

| 17.a. Date of each expenditure. (mm/dd/yyyy) | 17.b. Amount of each expenditure. | 17.c. Kind of expenditure (Specify if payment or loan, and if in cash or property.) | 17.d. Explain fully the circumstances of the expenditure(s), including the terms of any oral agreement or understanding pursuant to which they were made. |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |

**App. 4**

**FORM**

# LM-20 – AGREEMENT & ACTIVITIES REPORT

**OLMS**

**Office of Labor-Management Standards**

**U.S. Department of Labor**

OMB No. 1245-0003. Expires XX-XX-XXXX.

IMPORTANT: This report is mandatory under P.L. 86-257, as amended. Failure to comply may result in criminal prosecution, fines, or civil penalties as provided by 29 U.S.C. 439 or 440. Required of persons, including Labor Relations Consultants and Other Individuals and Organizations, under Section 203(b) of the Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA).

For Official Use Only

**E**

► *Read the instructions carefully before completing this report.* ◄

| 1.a. File Number: **C-** | 1.b. ☐ Hardship Exemption | 1.c. ☐ Amended Report |
|---|---|---|

**2. Contact information for person filing:**

Organization _____

Street _____

City _____ State _____

ZIP Code _____ Email Address _____

Employer Identification Number (EIN) _____

Contact Name _____

Title _____

**3. Other address where records necessary to verify this report are kept:**

Name _____

Title _____

Organization _____

Street _____

City _____

State _____ ZIP Code _____

Email Address _____

**4. Fiscal Year Covered: from _____ through _____**
(mm/dd/yyyy) (mm/dd/yyyy)

**5. Type of person**

a. ☐ Individual   b. ☐ Partnership   c. ☐ Corporation   d. ☐ Other

**6. Full name and address of employer with whom agreement or arrangement was made:**

☐ Check this box if you are filing a report for a union avoidance seminar.

Organization (including trade name, if any) _____

Street _____

City _____ State _____

ZIP Code _____ Email Address _____

Employer Identification Number (EIN) _____

Contact Name _____

Title _____

**7. Date agreement or arrangement entered into:_____**
mm/dd/yyyy

**8. Person(s) through whom agreement or arrangement made:**

(a)   Employer Representative:

Name and Title _____

**OR**

(b)  Prime Consultant: _____

Name and Title _____

Employer Identification Number (EIN) _____

Address _____

## Signatures

Each of the undersigned declares, under penalty of perjury and other applicable penalties of law, that all of the information submitted in this report (including the information contained in any accompanying documents) has been examined by the signatory and is, to the best of the undersigned's knowledge and belief, true, correct, and complete. *(See Section VII on penalties in the instructions.)*

13. Signed _____
President (If title, see instructions.)

14. Signed _____
Treasurer (If title, see instructions.)

On _____ _____
Date (mm/dd/yyyy)       Telephone Number

On _____ _____
Date (mm/dd/yyyy)       Telephone Number

**App. 5**

| Name of person filing: | File Number: **C-** |
| --- | --- |

9. Check the appropriate box(es) to indicate whether an object of the activities undertaken is directly or indirectly:

a. ☐   To persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing.

b. ☐   To supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding.

10. Terms and conditions.  (Explain in detail; see instructions.  Written agreements must be attached by clicking the "Add Attachments" link at the top of the form.  If reporting a union avoidance seminar, a single copy of the registration form and a description of the seminar provided to attendees also must be attached by clicking the "Add Attachments" link at the top of the form.)

11. Information regarding activities performed or to be performed by the labor relations consultant pursuant to agreement or arrangement. (See instructions.)

 a. Nature of activities performed or to be performed by the labor relations consultant pursuant to the agreement or arrangement:

**PERSUADER ACTIVITIES**:  Select from the following reportable activities those which, per agreement with the employer(s) named in item 6, have been or will be performed:

☐ Drafting, revising, or providing written materials for presentation, dissemination, or distribution to employees

☐ Drafting, revising, or providing a speech for presentation to employees

☐ Drafting, revising, or providing audiovisual or multi-media presentations for presentation, dissemination, or distribution to employees

☐ Drafting, revising, or providing website content for employees

☐ Planning or conducting individual employee meetings

☐ Planning or conducting group employee meetings

**ADDITIONAL INFORMATION:**

☐ Training supervisors or employer representatives to conduct individual or group employee meetings

☐ Coordinating or directing the activities of supervisors or employer representatives

☐ Establishing or facilitating employee committees

☐ Developing employer personnel policies or practices

☐ Identifying employees for disciplinary action, reward, or other targeting

☐ Conducting a seminar for supervisors or employer representatives

☐ Speaking with or otherwise communicating directly with employees.

☐ Other

**INFORMATION-SUPPLYING ACTIVITIES**:  Select each activity whereby you supply an employer with information concerning the activities of employees or a labor organization in connection with a labor dispute Involving such employer:

☐ Supplying information obtained from:

☐ Research or investigation concerning employees or labor organizations

☐ Supervisors or employer representatives

☐ Employees, employee representatives, or union meetings

☐ Surveillance of employees or union representatives (electronically or in person)

☐ Other

11.b. Period during which activities performed: _____
mm/dd/yyyy – mm/dd/yyyy

11.c. Extent of performance:

11.d. Name and address of person(s) through whom activities were performed or will be performed:

Name and Title   _____

Type of Person:   ☐ Employee of Consultant
☐ Independent Contractor

Organization   _____

Street _____

City _____ State _____ ZIP Code _____

Email Address _____

Employer Identification Number (EIN) _____

12.a. Identify subject  groups of employees:

12.b. Identify subject labor organizations:

| State | Relevant Code Provision | Text of Relevant Code Provision | Relevant Code Comments or Notes |
|---|---|---|---|
| Alabama | Alabama Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).<br><br>(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:<br><br>    (1) To prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or<br><br>    (2) To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge  or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client. | Comment:<br>. . . . The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.  See also Scope.<br><br><br>The [Alabama] Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. . . . In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client.  Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these Rules, but a presumption should exist against such a supersession. |
| Arkansas | Arkansas Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).<br><br>(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:     . . . .<br><br>    (6) to comply with other law or a court order[.] | Comment [3]:<br>The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.<br><br>Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4. |

App. 7

| | | | If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law.<br><br>Comment [15]:<br>A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure.  Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.  In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.  Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order. |
| Indiana | Indiana Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).<br><br>(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . .<br><br>    (6) to comply with other law or a court order. | Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4.  If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law. |

| | | | Comment [13]:<br>A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure.  Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.  In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.  Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order. |
| Michigan | Michigan Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) "Confidence" refers to information protected by the client-lawyer privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.<br><br>(b) Except when permitted under paragraph (c), a lawyer shall not knowingly:<br>   (1) reveal a confidence or secret of a client;<br>   (2) use a confidence or secret of a client to the disadvantage of the client; or<br>   (3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.<br><br>(c) A lawyer may reveal: . . . .<br>   (2) confidences or secrets when permitted or required by these rules, or when required by law or by court order[.] | The confidentiality rule applies to confidences and secrets as defined in the rule.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.<br><br>The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation.  See Rules 2.2, 2.3, 3.3 and 4.1.  In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client.  Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these rules, but a presumption should exist against such a supersession. |

| Oklahoma | Oklahoma Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).<br><br>(b) A lawyer may reveal information relating to representation of a client to the extent the lawyer reasonably believes necessary: . . . .<br><br>    (6) as permitted or required to comply with these Rules, other law or a court order. | Comment [3]:<br>. . . . The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.<br><br>Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4.  If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law.<br><br>Comment [13]:<br>A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure.  Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all non-frivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.  In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.  Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order. |

**App. 10**

| South Carolina | South Carolina Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)<br><br>(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . .<br><br>    (7) to comply with other law or a court order[.] | Comment [3]:<br>. . . . The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.<br><br>Comment [15]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4.  If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(7) permits the lawyer to make such disclosures as are necessary to comply with the law.<br><br>Comment [16]:<br>A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure.  Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.  In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.  Unless review is sought, however, paragraph (b)(7) permits the lawyer to comply with the court's order. |
|---|---|---|---|

**App. 11**

| Texas | Texas Disciplinary Rule of Professional Conduct 1.05 (Confidentiality of Information) | (a) "Confidential information" includes both "privileged information" and "unprivileged client information."  "Privileged information" refers to the information of a client protected by the lawyer-client privilege of Rule 503 of the Texas Rules of Evidence or of Rule 503 of the Texas Rules of Criminal Evidence or by the principles of attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United States Courts and Magistrates.  "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.<br><br>(b) Except as permitted by paragraphs (c) and (d), or as required by paragraphs (e) and (f), a lawyer shall not knowingly:<br>  (1) Reveal confidential information of a client or a former client to:<br>     (i) a person that the client has instructed is not to receive the information; or<br>     (ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.<br><br>  (2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.<br><br>  (3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.<br><br>  (4) Use privileged information of a client for the advantage of the lawyer or of a third person, unless the client consents after consultation.<br><br><br>(c) A lawyer may reveal confidential information: . . . .<br><br>  (4) When the lawyer has reason to believe it is necessary to do so in order to comply with a court order, a Texas Disciplinary Rules of Professional Conduct, or other law. | Comment 22:<br>Various other Texas Disciplinary Rules of Professional Conduct permit or require a lawyer to disclose information relating to the representation.  See Rules 1.07, 1.12, 2.02, 3.03 and 4.01.  In addition to these provisions, a lawyer may be obligated by other provisions of statutes or other law to give information about a client.  Whether another provision of law supersedes Rule 1.05 is a matter of interpretation beyond the scope of these Rules, but sub-paragraph (c)(4) protects the lawyer from discipline who acts on reasonable belief as to the effect of such laws. |

**App. 12**

| Utah | Utah Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).<br><br>(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . .<br><br>    (b)(6) to comply with other law or a court order[.] | Comment [3]:<br>. . . . The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.<br><br>Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4.  If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law. |
| West Virginia | West Virginia Rule of Professional Conduct 1.6 (Confidentiality of Information) | (a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by paragraph (b).<br><br>(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . .<br><br>    (6) to comply with other law or a court order[.] | Comment [3]:<br>. . . . The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.  See also Scope.<br><br>Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When |

**App. 13**

| | | | |
|---|---|---|---|
| | | | disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4. If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law. |
| Wisconsin | Wisconsin Supreme Court Rule 20:1.6 | (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in pars. (b) and (c).<br><br>(b) A lawyer shall reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or in substantial injury to the financial interest or property of another.<br><br>(c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: . . . .<br><br>     (5) to comply with other law or a court order. | Comment [3]:<br>. . . . The confidentiality rule. . . applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.  A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.  See also Scope.<br><br>Comment [12]:<br>Other law may require that a lawyer disclose information about a client.  Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules.  When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4. If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law.<br><br>Comment [13]:<br>A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the |

disclosure.  Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law.  In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4.  Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order.

| 86TH CONGRESS | HOUSE OF REPRESENTATIVES | REPORT |
|---|---|---|
| *1st Session* | | No. 1147 |

# LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT OF 1959

SEPTEMBER 3, 1959.—Ordered to be printed

Mr. BARDEN, from the committee of conference, submitted the following

## CONFERENCE REPORT

[To accompany S. 1555]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1555) to provide for the reporting and disclosure of certain financial transactions and administrative practices of labor organizations and employers, to prevent abuses in the administration of trusteeships by labor organizations, to provide standards with respect to the election of officers of labor organizations, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the House amendment insert the following:

### SHORT TIT...

SECTION 1. *This Act may be cited as the "Labor-Management Reporting and Disclosure Act of 1959".*

#### DECLARATION OF FINDINGS, PURPOSES, AND POLICY

SEC. 2. (a) *The Congress finds that, in the public interest, it continues to be the responsibility of the Federal Government to protect employees' rights to organize, choose their own representatives, bargain collectively,*

**App. 16**

*and otherwise engage in concerted activities for their mutual aid or protection; that the relations between employers and labor organizations and the millions of workers they represent have a substantial impact on the commerce of the Nation; and that in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations.*

*(b) The Congress further finds, from recent investigations in the labor and management fields, that there have been a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct which require further and supplementary legislation that will afford necessary protection of the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives.*

*(c) The Congress, therefore, further finds and declares that the enactment of this Act is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act, 1947, as amended, and the Railway Labor Act, as amended, and have the tendency or necessary effect of burdening or obstructing commerce by (1) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (2) occurring in the current of commerce; (3) materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods into or from the channels of commerce, or the prices of such materials or goods in commerce; or (4) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing into or from the channels of commerce.*

### DEFINITIONS

*Sec. 3. For the purposes of titles I, II, III, IV, V (except section 505), and VI of this Act—*

*(a) "Commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.*

*(b) "State" includes any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (43 U.S.C. 1331–1343).*

*(c) "Industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor Management Relations Act, 1947, as amended, or the Railway Labor Act, as amended.*

*(d) "Person" includes one or more individuals, labor organizations, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers.*

**App. 17**

LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT   3

(e) *"Employer"* means any employer or any group or association of employers engaged in an industry affecting commerce (1) which is, with respect to employees engaged in an industry affecting commerce, an employer within the meaning of any law of the United States relating to the employment of any employees or (2) which may deal with any labor organization concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and includes any person acting directly or indirectly as an employer or as an agent of an employer in relation to an employee but does not include the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof.

(f) *"Employee"* means any individual employed by an employer, and includes any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice or because of exclusion or expulsion from a labor organization in any manner or for any reason inconsistent with the requirements of this Act.

(g) *"Labor dispute"* includes any controversy concerning terms, tenure, or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

(h) *"Trusteeship"* means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws.

(i) *"Labor organization"* means a labor organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization, other than a State or local central body.

(j) A labor organization shall be deemed to be engaged in an industry affecting commerce if it—

(1) is the certified representative of employees under the provisions of the National Labor Relations Act, as amended, or the Railway Labor Act, as amended; or

(2) although not certified, is a national or international labor organization or a local labor organization recognized or acting as the representative of employees of an employer or employers engaged in an industry affecting commerce; or

(3) has chartered a local labor organization or subsidiary body which is representing or actively seeking to represent employees of employers within the meaning of paragraph (1) or (2); or

(4) has been chartered by a labor organization representing or actively seeking to represent employees within the meaning of paragraph (1) or (2) as the local or subordinate body through which such employees may enjoy membership or become affiliated with such labor organization; or

*(5) is a conference, general committee, joint or system board, or joint council, subordinate to a national or international labor organization, which includes a labor organization engaged in an industry affecting commerce within the meaning of any of the preceding paragraphs of this subsection, other than a State or local central body.*

*(k) "Secret ballot" means the expression by ballot, voting machine, or otherwise, but in no event by proxy, of a choice with respect to any election or vote taken upon any matter, which is cast in such a manner that the person expressing such choice cannot be identified with the choice expressed.*

*(l) "Trust in which a labor organization is interested" means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.*

*(m) "Labor relations consultant" means any person who, for compensation, advises or represents an employer, employer organization, or labor organization concerning employee organizing, concerted activities, or collective bargaining activities.*

*(n) "Officer" means any constitutional officer, any person authorized to perform the functions of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body.*

*(o) "Member" or "member in good standing", when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization.*

*(p) "Secretary" means the Secretary of Labor.*

*(q) "Officer, agent, shop steward, or other representative", when used with respect to a labor organization, includes elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority), but does not include salaried nonsupervisory professional staff, stenographic, and service personnel.*

*(r) "District court of the United States" means a United States district court and a United States court of any place subject to the jurisdiction of the United States.*

## TITLE I—BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

### BILL OF RIGHTS

*Sec. 101. (a)(1) Equal Rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.*

*(2) Freedom of Speech and Assembly.—Every member of any labor organization shall have the right to meet and assemble freely with*

**App. 19**

*other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.*

(3) *DUES, INITIATION FEES, AND ASSESSMENTS.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on the date of enactment of this Act shall not be increased, and no general or special assessment shall be levied upon such members, except—*

(A) *in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or*

(B) *in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization.*

(4) *PROTECTION OF THE RIGHT TO SUE.—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: And provided further, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.*

(5) *SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION.—No member of any labor organization may be fined, suspended, expelled, or*

**App. 20**

otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(b) Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect.

### CIVIL ENFORCEMENT

SEC. 102. Any person whose rights secured by the provisions of this title have been infringed by any violation of this title may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

### RETENTION OF EXISTING RIGHTS

SEC. 103. Nothing contained in this title shall limit the rights and remedies of any member of a labor organization under any State or Federal law or before any court or other tribunal, or under the constitution and bylaws of any labor organization.

### RIGHT TO COPIES OF COLLECTIVE BARGAINING AGREEMENTS

SEC. 104. It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement. The provisions of section 210 shall be applicable in the enforcement of this section.

### INFORMATION AS TO ACT

SEC. 105. Every labor organization shall inform its members concerning the provisions of this Act.

## TITLE II—REPORTING BY LABOR ORGANIZATIONS, OFFICERS AND EMPLOYEES OF LABOR ORGANIZATIONS, AND EMPLOYERS

### REPORT OF LABOR ORGANIZATIONS

SEC. 201. (a) Every labor organization shall adopt a constitution and bylaws and shall file a copy thereof with the Secretary, together with a report, signed by its president and secretary or corresponding principal officers, containing the following information—

*(1) the name of the labor organization, its mailing address, and any other address at which it maintains its principal office or at which it keeps the records referred to in this title;*

*(2) the name and title of each of its officers;*

*(3) the initiation fee or fees required from a new or transferred member and fees for work permits required by the reporting labor organization;*

*(4) the regular dues or fees or other periodic payments required to remain a member of the reporting labor organization; and*

*(5) detailed statements, or references to specific provisions of documents filed under this subsection which contain such statements, showing the provision made and procedures followed with respect to each of the following: (A) qualifications for or restrictions on membership, (B) levying of assessments, (C) participation in insurance or other benefit plans, (D) authorization for disbursement of funds of the labor organization, (E) audit of financial transactions of the labor organization, (F) the calling of regular and special meetings, (G) the selection of officers and stewards and of any representatives to other bodies composed of labor organizations' representatives, with a specific statement of the manner in which each officer was elected, appointed, or otherwise selected, (H) discipline or removal of officers or agents for breaches of their trust, (I) imposition of fines, suspensions, and expulsions of members, including the grounds for such action and any provision made for notice, hearing, judgment on the evidence, and appeal procedures, (J) authorization for bargaining demands, (K) ratification of contract terms, (L) authorization for strikes, and (M) issuance of work permits. Any change in the information required by this subsection shall be reported to the Secretary at the time the reporting labor organization files with the Secretary the annual financial report required by subsection (b).*

*(b) Every labor organization shall file annually with the Secretary a financial report signed by its president and treasurer or corresponding principal officers containing the following information in such detail as may be necessary accurately to disclose its financial condition and operations for its preceding fiscal year—*

*(1) assets and liabilities at the beginning and end of the fiscal year;*

*(2) receipts of any kind and the sources thereof;*

*(3) salary, allowances, and other direct or indirect disbursements (including reimbursed expenses) to each officer and also to each employee who, during such fiscal year, received more than $10,000 in the aggregate from such labor organization and any other labor organization affiliated with it or with which it is affiliated, or which is affiliated with the same national or international labor organization;*

*(4) direct and indirect loans made to any officer, employee, or member, which aggregated more than $250 during the fiscal year, together with a statement of the purpose, security, if any, and arrangements for repayment;*

*(5) direct and indirect loans to any business enterprise, together with a statement of the purpose, security, if any, and arrangements for repayment; and*

*(6) other disbursements made by it including the purposes thereof;* all in such categories as the Secretary may prescribe.

**App. 22**

**8**    LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT

(c) *Every labor organization required to submit a report under this title shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.*

(d) *Subsections (f), (g), and (h) of section 9 of the National Labor Relations Act, as amended, are hereby repealed.*

(e) *Clause (i) of section 8(a)(3) of the National Labor Relations Act, as amended, is amended by striking out the following: "and has at the time the agreement was made or within the preceding twelve months received from the Board a notice of compliance with sections 9 (f), (g), (h)".*

*REPORT OF OFFICERS AND EMPLOYEES OF LABOR ORGANIZATIONS*

SEC. 202. (a) *Every officer of a labor organization and every employee of a labor organization (other than an employee performing exclusively clerical or custodial services) shall file with the Secretary a signed report listing and describing for his preceding fiscal year—*

(1) *any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child derived directly or indirectly from, an employer whose employees such labor organization represents or is actively seeking to represent, except payments and other benefits received as a bona fide employee of such employer;*

(2) *any transaction in which he or his spouse or minor child engaged, directly or indirectly, involving any stock, bond, security, or loan to or from, or other legal or equitable interest in the business of an employer whose employees such labor organization represents or is actively seeking to represent;*

(3) *any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, any business a substantial part of which consists of buying from, selling or leasing to, or otherwise dealing with, the business of an employer whose employees such labor organization represents or is actively seeking to represent;*

(4) *any stock, bond, security, or other interest, legal or equitable, which he or his spouse or minor child directly or indirectly held in, and any income or any other benefit with monetary value (including reimbursed expenses) which he or his spouse or minor child directly or indirectly derived from, a business any part of which consists of buying from, or selling or leasing directly or indirectly to, or otherwise dealing with such labor organization;*

(5) *any direct or indirect business transaction or arrangement between him or his spouse or minor child and any employer whose*

**App. 23**

employees his organization represents or is actively seeking to rep-
resent, except work performed and payments and benefits received
as a bona fide employee of such employer and except purchases and
sales of goods or services in the regular course of business at prices
generally available to any employee of such employer; and

(6) any payment of money or other thing of value (including
reimbursed expenses) which he or his spouse or minor child received
directly or indirectly from any employer or any person who acts as
a labor relations consultant to an employer, except payments of the
kinds referred to in section 302(c) of the Labor Management Rela-
tions Act, 1947, as amended.

(b) The provisions of paragraphs (1), (2), (3), (4), and (5) of sub-
section (a) shall not be construed to require any such officer or employee
to report his bona fide investments in securities traded on a securities
exchange registered as a national securities exchange under the Securities
Exchange Act of 1934, in shares in an investment company registered
under the Investment Company Act of 1940, or in securities of a public
utility holding company registered under the Public Utility Holding
Company Act of 1935, or to report any income derived therefrom.

(c) Nothing contained in this section shall be construed to require any
officer or employee of a labor organization to file a report under subsection
(a) unless he or his spouse or minor child holds or has held an interest,
has received income or any other benefit with monetary value or a loan,
or has engaged in a transaction described therein.

### REPORT OF EMPLOYERS

SEC. 203. (a) Every employer who in any fiscal year made—

(1) any payment or loan, direct or indirect, of money or other
thing of value (including reimbursed expenses), or any promise or
agreement therefor, to any labor organization or officer, agent, shop
steward, or other representative of a labor organization, or employee
of any labor organization, except (A) payments or loans made by
any national or State bank, credit union, insurance company,
savings and loan association or other credit institution and (B) pay-
ments of the kind referred to in section 302(c) of the Labor Manage-
ment Relations Act, 1947, as amended;

(2) any payment (including reimbursed expenses) to any of his
employees, or any group or committee of such employees, for the
purpose of causing such employee or group or committee of employees
to persuade other employees to exercise or not to exercise, or as the
manner of exercising, the right to organize and bargain collectively
through representatives of their own choosing unless such payments
were contemporaneously or previously disclosed to such other em-
ployees;

(3) any expenditure, during the fiscal year, where an object thereof,
directly or indirectly, is to interfere with, restrain, or coerce employees
in the exercise of the right to organize and bargain collectively through
representatives of their own choosing, or is to obtain information
concerning the activities of employees or a labor organization in
connection with a labor dispute involving such employer, except for
use solely in conjunction with an administrative or arbitral pro-
ceeding or a criminal or civil judicial proceeding;

**App. 24**

*(4) any agreement or arrangement with a labor relations con-sultant or other independent contractor or organization pursuant to which such person undertakes activities where an object thereof, directly or indirectly, is to persuade employees to exercise or not to exercise, or persuade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing, or undertakes to supply such employer with information concerning the activities of employees or a labor organiza-tion in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administra-tive or arbitral proceeding or a criminal or civil judicial proceeding; or*

*(5) any payment (including reimbursed expenses) pursuant to an agreement or arrangement described in subdivision (4);*

*shall file with the Secretary a report, in a form prescribed by him, signed by its president and treasurer or corresponding principal officers showing in detail the date and amount of each such payment, loan, promise, agree-ment, or arrangement and the name, address, and position, if any, in any firm or labor organization of the person to whom it was made and a full explanation of the circumstances of all such payments, including the terms of any agreement or understanding pursuant to which they were made.*

*(b) Every person who pursuant to any agreement or arrangement with an employer undertakes activities where an object thereof is, directly or indirectly—*

*(1) to persuade employees to exercise or not to exercise, or per-suade employees as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing; or*

*(2) to supply an employer with information concerning the activi-ties of employees or a labor organization in connection with a labor dispute involving such employer, except information for use solely in conjunction with an administrative or arbitral proceeding or a criminal or civil judicial proceeding;*

*shall file within 30 days after entering into such agreement or arrangement a report with the Secretary, signed by its president and treasurer or cor-responding principal officers, containing the name under which such per-son is engaged in doing business and the address of its principal office, and a detailed statement of the terms and conditions of such agreement or arrangement. Every such person shall file annually, with respect to each fiscal year during which payments were made as a result of such an agreement or arrangement, a report with the Secretary, signed by its president and treasurer or corresponding principal officers, containing a statement (A) of its receipts of any kind from employers on account of labor relations advice or services, designating the sources thereof, and (B) of its disbursements of any kind, in connection with such services and the purposes thereof. In each such case such information shall be set forth in such categories as the Secretary may prescribe.*

*(c) Nothing in this section shall be construed to require any employer or other person to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or represent-ing or agreeing to represent such employer before any court, administra-tive agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer with respect to wages, hours, or other terms or conditions of employment or the negotiation of an agreement or any question arising thereunder.*

**App. 25**

(d) *Nothing contained in this section shall be construed to require an employer to file a report under subsection (a) unless he has made an expenditure, payment, loan, agreement, or arrangement of the kind described therein. Nothing contained in this section shall be construed to require any other person to file a report under subsection (b) unless he was a party to an agreement or arrangement of the kind described therein.*

(e) *Nothing contained in this section shall be construed to require any regular officer, supervisor, or employee of an employer to file a report in connection with services rendered to such employer nor shall any employer be required to file a report covering expenditures made to any regular officer, supervisor, or employee of an employer as compensation for service as a regular officer, supervisor, or employee of such employer.*

(f) *Nothing contained in this section shall be construed as an amendment to, or modification of the rights protected by, section 8(c) of the National Labor Relations Act, as amended.*

(g) *The term "interfere with, restrain, or coerce" as used in this section means interference, restraint, and coercion which, if done with respect to the exercise of rights guaranteed in section 7 of the National Labor Relations Act, as amended, would, under section 8(a) of such Act, constitute an unfair labor practice.*

### ATTORNEY-CLIENT COMMUNICATIONS EXEMPTED

Sec. 204. *Nothing contained in this Act shall be construed to require an attorney who is a member in good standing of the bar of any State, to include in any report required to be filed pursuant to the provisions of this Act any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.*

### REPORTS MADE PUBLIC INFORMATION

Sec. 205. (a) *The contents of the reports and documents filed with the Secretary pursuant to sections 201, 202, and 203 shall be public information, and the Secretary may publish any information and data which he obtains pursuant to the provisions of this title. The Secretary may use the information and data for statistical and research purposes, and compile and publish such studies, analyses, reports, and surveys based thereon as he may deem appropriate.*

(b) *The Secretary shall by regulation make reasonable provision for the inspection and examination, on the request of any person, of the information and data contained in any report or other document filed with him pursuant to section 201, 202, or 203.*

(c) *The Secretary shall by regulation provide for the furnishing by the Department of Labor of copies of reports or other documents filed with the Secretary pursuant to this title, upon payment of a charge based upon the cost of the service. The Secretary shall make available without payment of a charge, or require any person to furnish, to such State agency as is designated by law or by the Governor of the State in which such person has his principal place of business or headquarters, upon request of the Governor of such State, copies of any reports and documents filed by such person with the Secretary pursuant to section 201, 202, or 203, or of information and data contained therein. No person shall be required by reason of any law of any State to furnish to any officer or agency of such State any information included in a report filed by such person with the*

**App. 26**

Secretary pursuant to the provisions of this title, if a copy of such report, or of the portion thereof containing such information, is furnished to such officer or agency. All moneys received in payment of such charges fixed by the Secretary pursuant to this subsection shall be deposited in the general fund of the Treasury.

### RETENTION OF RECORDS

SEC. 206. Every person required to file any report under this title shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Secretary may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain.

### EFFECTIVE DATE

SEC. 207. (a) Each labor organization shall file the initial report required under section 201(a) within ninety days after the date on which it first becomes subject to this Act.

(b) Each person required to file a report under section 201(b), 202, 203(a), or the second sentence of 203(b) shall file such report within ninety days after the end of each of its fiscal years; except that where such person is subject to section 201(b), 202, 203(a), or the second sentence of 203(b), as the case may be, for only a portion of such a fiscal year (because the date of enactment of this Act occurs during such person's fiscal year or such person becomes subject to this Act during its fiscal year) such person may consider that portion as the entire fiscal year in making such report.

### RULES AND REGULATIONS

SEC. 208. The Secretary shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under this title and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion of such reporting requirements. In exercising his power under this section the Secretary shall prescribe by general rule simplified reports for labor organizations or employers for whom he finds that by virtue of their size a detailed report would be unduly burdensome, but the Secretary may revoke such provision for simplified forms of any labor organization or employer if he determines, after such investigation as he deems proper and due notice and opportunity for a hearing, that the purposes of this section would be served thereby.

### CRIMINAL PROVISIONS

SEC. 209. (a) Any person who willfully violates this title shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

(b) Any person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any document, report, or other information required

*under the provisions of this title shall be fined not more than $10,000 or imprisoned for not more than one year, or both.*

*(c) Any person who willfully makes a false entry in or willfully conceals, withholds, or destroys any books, records, reports, or statements required to be kept by any provision of this title shall be fined not more than $10,000 or imprisoned for not more than one year, or both.*

*(d) Each individual required to sign reports under sections 201 and 203 shall be personally responsible for the filing of such reports and for any statement contained therein which he knows to be false.*

### CIVIL ENFORCEMENT

*Sec. 210. Whenever it shall appear that any person has violated or is about to violate any of the provisions of this title, the Secretary may bring a civil action for such relief (including injunctions) as may be appropriate. Any such action may be brought in the district court of the United States where the violation occurred or, at the option of the parties, in the United States District Court for the District of Columbia.*

## TITLE III—TRUSTEESHIPS

### REPORTS

*Sec. 301. (a) Every labor organization which has or assumes trusteeship over any subordinate labor organization shall file with the Secretary within thirty days after the date of the enactment of this Act or the imposition of any such trusteeship, and semiannually thereafter, a report, signed by its president and treasurer or corresponding principal officers, as well as by the trustees of such subordinate labor organization, containing the following information: (1) the name and address of the subordinate organization; (2) the date of establishing the trusteeship; (3) a detailed statement of the reason or reasons for establishing or continuing the trusteeship; and (4) the nature and extent of participation by the membership of the subordinate organization in the selection of delegates to represent such organization in regular or special conventions or other policy-determining bodies and in the election of officers of the labor organization which has assumed trusteeship over such subordinate organization. The initial report shall also include a full and complete account of the financial condition of such subordinate organization as of the time trusteeship was assumed over it. During the continuance of a trusteeship the labor organization which has assumed trusteeship over a subordinate labor organization shall file on behalf of the subordinate labor organization the annual financial report required by section 201(b) signed by the president and treasurer or corresponding principal officers of the labor organization which has assumed such trusteeship and the trustees of the subordinate labor organization.*

*(b) The provisions of section 201(c), 205, 206, 208, and 210 shall be applicable to reports filed under this title.*

*(c) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.*

*(d) Any person who makes a false statement or representation of a material fact, knowing it to be false, or who knowingly fails to disclose a material fact, in any report required under the provisions of this section or willfully makes any false entry in or willfully withholds, conceals, or*

**App. 28**

**14**   LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT

destroys any documents, books, records, reports, or statements upon which such report is based, shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

(e) Each individual required to sign a report under this section shall be personally responsible for the filing of such report and for any statement contained therein which he knows to be false.

### PURPOSES FOR WHICH A TRUSTEESHIP MAY BE ESTABLISHED

SEC. 302. Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

### UNLAWFUL ACTS RELATING TO LABOR ORGANIZATION UNDER TRUSTEESHIP

SEC. 303. (a) During any period when a subordinate body of a labor organization is in trusteeship, it shall be unlawful (1) to count the vote of delegates from such body in any convention or election of officers of the labor organization unless the delegates have been chosen by secret ballot in an election in which all the members in good standing of such subordinate body were eligible to participate, or (2) to transfer to such organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship: Provided, That nothing herein contained shall prevent the distribution of the assets of a labor organization in accordance with its constitution and bylaws upon the bona fide dissolution thereof.

(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

### ENFORCEMENT

SEC. 304. (a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this title (except section 301) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this title (except section 301) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate.

(b) For the purpose of actions under this section, district courts of the United States shall be deemed to have jurisdiction of a labor organization (1) in the district in which the principal office of such labor organization is located, or (2) in any district in which its duly authorized officers or agents are engaged in conducting the affairs of the trusteeship.

(c) In any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements

of its constitution and bylaws and authorized or ratified after a fair hearing
either before the executive board or before such other body as may be pro-
vided in accordance with its constitution or bylaws shall be presumed
valid for a period of eighteen months from the date of its establishment
and shall not be subject to attack during such period except upon clear and
convincing proof that the trusteeship was not established or maintained
in good faith for a purpose allowable under section 302. After the
expiration of eighteen months the trusteeship shall be presumed invalid
in any such proceeding and its discontinuance shall be decreed unless
the labor organization shall show by clear and convincing proof that the
continuation of the trusteeship is necessary for a purpose allowable under
section 302.  In the latter event the court may dismiss the complaint or
retain jurisdiction of the cause on such conditions and for such period
as it deems appropriate.

### REPORT TO CONGRESS

SEC. 305. The Secretary shall submit to the Congress at the expiration
of three years from the date of enactment of this Act a report upon the
operation of this title.

### COMPLAINT BY SECRETARY

SEC. 306. The rights and remedies provided by this title shall be in
addition to any and all other rights and remedies at law or in equity:
Provided, That upon the filing of a complaint by the Secretary the juris-
diction of the district court over such trusteeship shall be exclusive and the
final judgment shall be res judicata.

## TITLE IV—ELECTIONS

### TERMS OF OFFICE; ELECTION PROCEDURES

SEC. 401. (a) Every national or international labor organization,
except a federation of national or international labor organizations, shall
elect its officers not less often than once every five years either by secret
ballot among the members in good standing or at a convention of delegates
chosen by secret ballot.
(b) Every local labor organization shall elect its officers not less often
than once every three years by secret ballot among the members in good
standing.
(c) Every national or international labor organization, except a fed-
eration of national or international labor organizations, and every local
labor organization, and its officers, shall be under a duty, enforcible
at the suit of any bona fide candidate for office in such labor organization
in the district court of the United States in which such labor organization
maintains its principal office, to comply with all reasonable requests of
any candidate to distribute by mail or otherwise at the candidate's expense
campaign literature in aid of such person's candidacy to all members in
good standing of such labor organization and to refrain from discrimina-
tion in favor of or against any candidate with respect to the use of lists
of members, and whenever such labor organizations or its officers authorize
the distribution by mail or otherwise to members of campaign literature on
behalf of any candidate or of the labor organization itself with reference
to such election, similar distribution at the request of any other bona fide

**App. 30**

*candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution. Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots.*

*(d) Officers of intermediate bodies, such as general committees, system boards, joint boards, or joint councils, shall be elected not less often than once every four years by secret ballot among the members in good standing or by labor organization officers representative of such members who have been elected by secret ballot.*

*(e) In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof. Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address. Each member in good standing shall be entitled to one vote. No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues. The votes cast by members of each local labor organization shall be counted, and the results published, separately. The election officials designated in the constitution and bylaws or the secretary, if no other official is designated shall preserve for one year the ballots and all other records pertaining to the election. The election shall be conducted in accordance with the constitution and bylaws of such organization insofar as they are not inconsistent with the provisions of this title.*

*(f) When officers are chosen by a convention of delegates elected by secret ballot, the convention shall be conducted in accordance with the constitution and bylaws of the labor organization insofar as they are not inconsistent with the provisions of this title. The officials designated in the constitution and bylaws or the secretary, if no other is designated, shall preserve for one year the credentials of the delegates and all minutes and other records of the convention pertaining to the election of officers.*

*(g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this title. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.*

*(h) If the Secretary, upon application of any member of a local labor organization, finds after hearing in accordance with the Administrative Procedure Act that the constitution and bylaws of such labor organization*

do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and hearing, by the members in good standing voting in a secret ballot conducted by the officers of such labor organization in accordance with its constitution and bylaws insofar as they are not inconsistent with the provisions of this title.

(i) The Secretary shall promulgate rules and regulations prescribing minimum standards and procedures for determining the adequacy of the removal procedures to which reference is made in subsection (h).

### ENFORCEMENT

SEC. 402. (a) A member of a labor organization—

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or

(2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this title and such rules and regulations as the Secretary may prescribe. The court shall have power to take such action as it deems proper to preserve the assets of the labor organization.

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 401, or

(2) that the violation of section 401 may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization. If the proceeding is for the removal of officers pursuant to subsection (h) of section 401, the Secretary shall certify the results of the vote and the court shall enter a decree declaring whether such persons have been removed as officers of the labor organization.

(d) An order directing an election, dismissing a complaint, or designating elected officers of a labor organization shall be appealable in the

**App. 32**

**18**   LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT

*same manner as the final judgment in a civil action, but an order directing an election shall not be stayed pending appeal.*

### APPLICATION OF OTHER LAWS

SEC. 403. *No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this title. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive.*

### EFFECTIVE DATE

SEC. 404. *The provisions of this title shall become applicable—*
*(1) ninety days after the date of enactment of this Act in the case of a labor organization whose constitution and bylaws can lawfully be modified or amended by action of its constitutional officers or governing body, or*
*(2) where such modification can only be made by a constitutional convention of the labor organization, not later than the next constitutional convention of such labor organization after the date of enactment of this Act, or one year after such date, whichever is sooner. If no such convention is held within such one-year period, the executive board or similar governing body empowered to act for such labor organization between conventions is empowered to make such interim constitutional changes as are necessary to carry out the provisions of this title.*

## TITLE V—SAFEGUARDS FOR LABOR ORGANIZATIONS

### FIDUCIARY RESPONSIBILITY OF OFFICERS OF LABOR ORGANIZATIONS

SEC. 501. *(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.*

**App. 33**

(b) *When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.*

(c) *Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.*

### BONDING

SEC. 502. (a) *Every officer, agent, shop steward, or other representative or employee of any labor organization (other than a labor organization whose property and annual financial receipts do not exceed $5,000 in value), or of a trust in which a labor organization is interested, who handles funds or other property thereof shall be bonded for the faithful discharge of his duties. The bond of each such person shall be fixed at the beginning of the organization's fiscal year and shall be in an amount not less than 10 per centum of the funds handled by him and his predecessor or predecessors, if any, during the preceding fiscal year, but in no case more than $500,000. If the labor organization or the trust in which a labor organization is interested does not have a preceding fiscal year, the amount of the bond shall be, in the case of a local labor organization, not less than $1,000, and in the case of any other labor organization or of a trust in which a labor organization is interested, not less than $10,000. Such bonds shall be individual or schedule in form, and shall have a corporate surety company as surety thereon. Any person who is not covered by such bonds shall not be permitted to receive, handle, disburse, or otherwise exercise custody or control of the funds or other property of a labor organization or of a trust in which a labor organization is interested. No such bond shall be placed through an agent or broker or with a surety company, in which any labor organization or any officer, agent, shop steward, or other representative of a labor organization has any direct or indirect interest. Such surety company shall be a corporate surety which holds a grant of authority from the Secretary of the Treasury under the Act of July 30, 1947 (6 U.S.C. 6–13), as an acceptable surety on Federal bonds.*

(b) *Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.*

**App. 34**

*MAKING OF LOANS; PAYMENT OF FINES*

Sec. 503. (a) No labor organization shall make directly or indirectly any loan or loans to any officer or employee of such organization which results in a total indebtedness on the part of such officer or employee to the labor organization in excess of $2,000.

(b) No labor organization or employer shall directly or indirectly pay the fine of any officer or employee convicted of any willful violation of this Act.

(c) Any person who willfully violates this section shall be fined not more than $5,000 or imprisoned for not more than one year, or both.

*PROHIBITION AGAINST CERTAIN PERSONS HOLDING OFFICE*

Sec. 504. (a) No person who is or has been a member of the Communist Party or who has been convicted of, or served any part of a prison term resulting from his conviction of, robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, assault which inflicts grievous bodily injury, or a violation of title II or III of this Act, or conspiracy to commit any such crimes, shall serve—

(1) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, or other employee (other than as an employee performing exclusively clerical or custodial duties) of any labor organization, or

(2) as a labor relations consultant to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee (other than as an employee performing exclusively clerical or custodial duties) of any group or association of employers dealing with any labor organization,

during or for five years after the termination of his membership in the Communist Party, or for five years after such conviction or after the end of such imprisonment, unless prior to the end of such five-year period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) the Board of Parole of the United States Department of Justice determines that such person's service in any capacity referred to in clause (1) or (2) would not be contrary to the purposes of this Act. Prior to making any such determination the Board shall hold an administrative hearing and shall give notice of such proceeding by certified mail to the State, county, and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted. The Board's determination in any such proceeding shall be final. No labor organization or officer thereof shall knowingly permit any person to assume or hold any office or paid position in violation of this subsection.

(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

(c) For the purposes of this section, any person shall be deemed to have been "convicted" and under the disability of "conviction" from the date of the judgment of the trial court or the date of the final sustaining of such judgment on appeal, whichever is the later event, regardless of whether such conviction occurred before or after the date of enactment of this Act.

**App. 35**

*AMENDMENT TO SECTION 302, LABOR MANAGEMENT RELATIONS ACT, 1947*

SEC. 505. *Subsections (a), (b), and (c) of section 302 of the Labor Management Relations Act, 1947, as amended, are amended to read as follows:*

"SEC. 302. (a) *It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—*

"(1) *to any representative of any of his employees who are employed in an industry affecting commerce; or*

"(2) *to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or*

"(3) *to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or*

"(4) *to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.*

"(b)(1) *It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a).*

"(2) *It shall be unlawful for any labor organization, or for any person acting as an officer, agent, representative, or employee of such labor organization, to demand or accept from the operator of any motor vehicle (as defined in part II of the Interstate Commerce Act) employed in the transportation of property in commerce, or the employer of any such operator, any money or other thing of value payable to such organization or to an officer, agent, representative or employee thereof as a fee or charge for the unloading, or in connection with the unloading, of the cargo of such vehicle: Provided, That nothing in this paragraph shall be construed to make unlawful any payment by an employer to any of his employees as compensation for their services as employees.*

"(c) *The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer; (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress; (3) with respect to the sale or purchase of an article or commodity at the prevailing market price in the regular course of business; (4) with respect to money deducted*

**App. 36**

*from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of employees may agree upon and in the event the employer and employee groups deadlock on the administration of such fund and there are no neutral persons empowered to break such deadlock, such agreement provides that the two groups shall agree on an impartial umpire to decide such dispute, or in event of their failure to agree within a reasonable length of time, an impartial umpire to decide such dispute shall, on petition of either group, be appointed by the district court of the United States for the district where the trust fund has its principal office, and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities; or (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs: Provided, That the requirements of clause (B) of the proviso to clause (5) of this subsection shall apply to such trust funds."*

## TITLE VI—MISCELLANEOUS PROVISIONS

### INVESTIGATIONS

*SEC. 601. (a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this Act (except title I or amendments made by this Act to other statutes) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in*

LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT        23

*any report required by this Act and concerning the reasons for failure or refusal to file such a report or any other matter which he deems to be appropriate as a result of such an investigation.*

*(b) For the purpose of any investigation provided for in this Act, the provisions of sections 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the Federal Trade Commission Act of September 16, 1914, as amended (15 U.S.C. 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Secretary or any officers designated by him.*

### EXTORTIONATE PICKETING

*SEC. 602. (a) It shall be unlawful to carry on picketing on or about the premises of any employer for the purpose of, or as part of any conspiracy or in furtherance of any plan or purpose for, the personal profit or enrichment of any individual (except a bona fide increase in wages or other employee benefits) by taking or obtaining any money or other thing of value from such employer against his will or with his consent.*

*(b) Any person who willfully violates this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.*

### RETENTION OF RIGHTS UNDER OTHER FEDERAL AND STATE LAWS

*SEC. 603. (a) Except as explicitly provided to the contrary, nothing in this Act shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this Act shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State.*

*(b) Nothing contained in titles I, II, III, IV, V, or VI of this Act shall be construed to supersede or impair or otherwise affect the provisions of the Railway Labor Act, as amended, or any of the obligations, rights, benefits, privileges, or immunities of any carrier, employee, organization, representative, or person subject thereto; nor shall anything contained in said titles (except section 505) of this Act be construed to confer any rights, privileges, immunities, or defenses upon employers, or to impair or otherwise affect the rights of any person under the National Labor Relations Act, as amended.*

### EFFECT ON STATE LAWS

*SEC. 604. Nothing in this Act shall be construed to impair or diminish the authority of any State to enact and enforce general criminal laws with respect to robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape, assault with intent to kill, or assault which inflicts grievous bodily injury, or conspiracy to commit any of such crimes.*

### SERVICE OF PROCESS

*SEC. 605. For the purposes of this Act, service of summons, subpena, or other legal process of a court of the United States upon an officer or agent of a labor organization in his capacity as such shall constitute service upon the labor organization.*

59017°—59   H. Rept., 86–1, vol. 7——26

App. 38

### ADMINISTRATIVE PROCEDURE ACT

*Sec. 606. The provisions of the Administrative Procedure Act shall be applicable to the issuance, amendment, or rescission of any rules or regulations, or any adjudication, authorized or required pursuant to the provisions of this Act.*

### OTHER AGENCIES AND DEPARTMENTS

*Sec. 607. In order to avoid unnecessary expense and duplication of functions among Government agencies, the Secretary may make such arrangements or agreements for cooperation or mutual assistance in the performance of his functions under this Act and the functions of any such agency as he may find to be practicable and consistent with law. The Secretary may utilize the facilities or services of any department, agency, or establishment of the United States or of any State or political subdivision of a State, including the services of any of its employees, with the lawful consent of such department, agency, or establishment; and each department, agency, or establishment of the United States is authorized and directed to cooperate with the Secretary and, to the extent permitted by law, to provide such information and facilities as he may request for his assistance in the performance of his functions under this Act. The Attorney General or his representative shall receive from the Secretary for appropriate action such evidence developed in the performance of his functions under this Act as may be found to warrant consideration for criminal prosecution under the provisions of this Act or other Federal law.*

### CRIMINAL CONTEMPT

*Sec. 608. No person shall be punished for any criminal contempt allegedly committed outside the immediate presence of the court in connection with any civil action prosecuted by the Secretary or any other person in any court of the United States under the provisions of this Act unless the facts constituting such criminal contempt are established by the verdict of the jury in a proceeding in the district court of the United States, which jury shall be chosen and empaneled in the manner prescribed by the law governing trial juries in criminal prosecutions in the district courts of the United States.*

### PROHIBITION ON CERTAIN DISCIPLINE BY LABOR ORGANIZATION

*Sec. 609. It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act. The provisions of section 102 shall be applicable in the enforcement of this section.*

### DEPRIVATION OF RIGHTS UNDER ACT BY VIOLENCE

*Sec. 610. It shall be unlawful for any person through the use of force or violence, or threat of the use of force or violence, to restrain, coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of any right to which he is entitled under the provisions of this*

*Act. Any person who willfully violates this section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.*

### SEPARABILITY PROVISIONS

*Sec. 611. If any provision of this Act, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this Act or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.*

## TITLE VII—AMENDMENTS TO THE LABOR MANAGE-MENT RELATIONS ACT, 1947, AS AMENDED

### FEDERAL-STATE-JURISDICTION

*Sec. 701. (a) Section 14 of the National Labor Relations Act, as amended, is amended by adding at the end thereof the following new subsection:*

*"(c)(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.*

*"(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."*

*(b) Section 3(b) of such Act is amended to read as follows:*

*"(b) The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. The Board is also authorized to delegate to its regional directors its powers under section 9 to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question of representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 9 and certify the results thereof, except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under this paragraph, but such a review shall not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director. A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof. The Board shall have an official seal which shall be judicially noticed."*

### ECONOMIC STRIKERS

*Sec. 702. Section 9(c)(3) of the National Labor Relations Act, as amended, is amended by amending the second sentence thereof to read as follows: "Employees engaged in an economic strike who are not entitled*

**App. 40**

to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of this Act in any election conducted within twelve months after the commencement of the strike."

### VACANCY IN OFFICE OF GENERAL COUNSEL

SEC. 703. Section 3(d) of the National Labor Relations Act, as amended, is amended by adding after the period at the end thereof the following: "In case of a vacancy in the office of the General Counsel the President is authorized to designate the officer or employee who shall act as General Counsel during such vacancy, but no person or persons so designated shall so act (1) for more than forty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted."

### BOYCOTTS AND RECOGNITION PICKETING

SEC. 704. (a) Section 8(b)(4) of the National Labor Relations Act, as amended, is amended to read as follows:

"(4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:

"(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by section 8(e);

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9;

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

**App. 41**

*Provided,* That nothing contained in this subsection (b) shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this Act: *Provided further,* That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;".

(b) *Section 8 of the National Labor Relations Act, as amended, is amended by adding at the end thereof the following new subsection:*

"(e) *It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: Provided, That nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: Provided further, That for the purposes of this subsection (e) and section 8(b)(4)(B) the terms 'any employer', 'any person engaged in commerce or an industry affecting commerce', and 'any person' when used in relation to the terms 'any other producer, processor, or manufacturer,', 'any other employer', or 'any other person' shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: Provided further, That nothing in this Act shall prohibit the enforcement of any agreement which is within the foregoing exception.*"

(c) *Section 8(b) of the National Labor Relations Act, as amended, is amended by striking out the word "and" at the end of paragraph (5), striking out the period at the end of paragraph (6), and inserting in lieu thereof a semicolon and the word "and", and adding a new paragraph as follows:*

"(7) *to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:*

**App. 42**

"(A) where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under section 9(c) of this Act,

"(B) where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, or

"(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: Provided, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c)(1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: Provided further, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

"Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this section 8(b)."

(d) Section 10(l) of the National Labor Relations Act, as amended, is amended by adding after the words "section 8(b)," the words "or section 8(e) or section 8(b)(7)," and by striking out the period at the end of the third sentence and inserting in lieu thereof a colon and the following: "Provided further, That such officer or regional attorney shall not apply for any restraining order under section 8(b)(7) if a charge against the employer under section 8(a)(2) has been filed and after the preliminary investigation, he has reasonable cause to believe that such charge is true and that a complaint should issue."

(e) Section 303(a) of the Labor Management Relations Act, 1947, is amended to read as follows:

"(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended."

### Building and Construction Industry

SEC. 705. (a) Section 8 of the National Labor Relations Act, as amended by section 704(b) of this Act, is amended by adding at the end thereof the following new subsection:

"(f) It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in section 8(a) of this Act as an unfair labor practice) because (1) the majority status of such labor organization

has not been established under the provisions of section 9 of this Act prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area: Provided, That nothing in this subsection shall set aside the final proviso to section 8(a)(3) of this Act: Provided further, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e)."

(b) Nothing contained in the amendment made by subsection (a) shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

### PRIORITY IN CASE HANDLING

SEC. 706. Section 10 of the National Labor Relations Act, as amended, is amended by adding at the end thereof a new subsection as follows:

"(m) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of subsection (a)(3) or (b)(2) of section 8, such charge shall be given priority over all other cases except cases of like character in the office where it is filed or to which it is referred and cases given priority under subsection (l)."

### EFFECTIVE DATE OF AMENDMENTS

SEC. 707. The amendments made by this title shall take effect sixty days after the date of the enactment of this Act and no provision of this title shall be deemed to make an unfair labor practice, any act which is performed prior to such effective date which did not constitute an unfair labor practice prior thereto.

And the House agree to the same.

GRAHAM A. BARDEN,
PHIL M. LANDRUM,
FRANK THOMPSON, Jr.,
CARROLL D. KEARNS,
WILLIAM H. AYRES,
ROBERT P. GRIFFIN,
*Managers on the Part of the House.*

JOHN F. KENNEDY,
PAT MCNAMARA,
JENNINGS RANDOLPH,
BARRY GOLDWATER,
EVERETT M. DIRKSEN,
WINSTON L. PROUTY,
*Managers on the Part of the Senate.*

**App. 44**

## STATEMENT OF THE MANAGERS ON THE PART OF THE HOUSE

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1555) to provide for the reporting and disclosure of certain financial transactions and administrative practices of labor organizations and employers, to prevent abuses in the administration of trusteeships by labor organizations, to provide standards with respect to the election of officers of labor organizations, and for other purposes, submit the following statement in explanation of the effect of the action agreed upon by the conferees and recommended in the accompanying conference report:

The House amendment strikes out all of the Senate bill after the enacting clause and inserts a substitute.  The Senate recedes from its disagreement to the amendment of the House, with an amendment which is a substitute for both the Senate bill and the House amendment.  The differences between the House amendment and the substitute agreed to in conference are noted in the following outline, except for minor, technical, and conforming changes.

### SECTION 3—DEFINITIONS

The House amendment makes many changes in the definitions the Senate bill contains.  In all major respects the compromise the conference agreed on adopts the House versions.  However, in the conference substitute, the definition of "labor organization" and the specification of which labor organizations that are engaged in an industry affecting commerce are changed to include "general committees."  This refers to organizations of the type commonly found in the railway unions that designate general committees.

### SECTION 101—BILL OF RIGHTS

This section of the Senate bill and the House amendment, for the most part, contain similar provisions.  In all instances where there are differences between the Senate bill and the House amendment the conference substitute follows the House amendment.

In this section there is a matter that must be explained.  In paragraph (5), relating to safeguards against improper disciplinary action, it should be noted that the prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer in the union.

### SECTION 201—REPORT OF LABOR ORGANIZATIONS

The conference substitute is the same as the House amendment, except that it makes clear that the Secretary of Labor may prescribe

31

**App. 46**

the different categories of financial data that labor organizations must report.

### SECTION 203—REPORTS OF EMPLOYERS

The conference substitute substantially rewrites section 203 of the House amendment.

Subsection (a) of both the House amendment and the conference substitute require employers to make detailed reports to the Secretary of Labor of payments, expenditures, or agreements described below.

First, both the House amendment and the conference substitute require employers to report payments and loans to unions and union officers and employees; and they both except payments that section 302(c) of the Labor Management Relations Act, 1947, permits. The substitute also contains an exception, taken from the Senate bill, for payments and loans made by credit institutions, such as banks.

Second, the substitute requires reports of all payments by an employer to his employees, or to a group or committee of his employees, for the purpose of causing them to persuade other employees to exercise or not to exercise, or as to the manner of exercising, the right to organize and bargain collectively through representatives of their own choosing. This requires reporting payments to "front organizations" that employers set up purportedly as spontaneous employee committees or groups. Payments of this type would not have to be reported if they were disclosed to such other employees when they were made or before they were made.

Third, the substitute requires reports of expenditures by an employer made to interfere with, coerce, or restrain employees in exercising their statutory rights to organize and bargain collectively, or to purchase information not otherwise available concerning activities of employees, or of a union, in connection with a labor dispute involving such employer, unless the information is for use solely in connection with an administrative or arbitral proceeding or a civil or criminal judicial proceeding. It should be noted that an employer is not required to report expenditures to obtain information in connection with a labor dispute in which he is not involved.

Fourth, the substitute requires reports of all agreements with independent contractors, such as Nathan Shefferman, pursuant to which the independent contractor undertakes to persuade employees to exercise or not to exercise, or as to the manner of exercising, their statutory right to organize and to bargain collectively, or undertakes to supply the employer with information concerning activities of employees, or of a union, in connection with a labor dispute involving such employer, unless the information is for use solely in connection with an administrative or arbitral proceeding or a criminal or civil judicial proceeding.

Fifth, the substitute requires reports of payments under the agreements the preceding paragraph describes.

Subsection (b) of section 203 of the substitute agreed upon in conference deals with reports by labor relations consultants.

It requires reports from a consultant who enters into an agreement with an employer to engage in any of the activities that, under section 203(a)(4), must be reported by the employer.

**App. 47**

Subsection (c) of section 203 of the conference substitute grants a broad exemption from the requirements of the section with respect to the giving of advice. This subsection is further discussed in connection with section 204.

Subsection (d) of section 203 makes it clear that reports are required only where an expenditure, payment, loan, or agreement of the kinds described has been made.

Subsection (e) of section 203 makes it clear that no regular officer, supervisor, or employee is required to file a report in connection with services rendered to his employer. Similarly, no employer is required to file a report of expenditures made to any of his regular officers, supervisors, or employees for their services as such.

Subsection (f) of section 203 makes it clear that this section does not impair the free speech that is described in section 8(c) of the National Labor Relations Act, as amended.

Subsection (g) of section 203 provides that the term "interfere with, restrain, or coerce" has the same meaning when used in this section as it has when used in the National Labor Relations Act. The House amendment contains a similar provision.

SECTION 204—ATTORNEY-CLIENT COMMUNICATIONS EXEMPTED

The Senate bill provides that an attorney need not include in any report required by the act any information which was lawfully communicated to such attorney by any of his clients in the course of a legitimate attorney-client relationship.

The conference substitute adopts the provisions of the Senate bill, but in connection therewith the conferees included, in section 203(c), a provision taken from the Senate bill that provides that an employer or other person is not required to file a report covering the services of such person by reason of his giving or agreeing to give advice to such employer or representing or agreeing to represent such employer before any court, administrative agency, or tribunal of arbitration or engaging or agreeing to engage in collective bargaining on behalf of such employer or the negotiation of an agreement or any question arising thereunder.

SECTION 205—REPORTS MADE PUBLIC INFORMATION

The Senate bill, as a part of subsection (a) of this section, authorizes the Secretary of Labor to publish any information and data which he obtains under the title, and to use it for statistical and research purposes as he deems appropriate. It also allowed him to publish such studies, analyses, reports, and surveys based on information and data obtained under the title as he may deem appropriate. The House amendment contains no comparable provision. The conference substitute includes this provision.

SECTION 401—TERMS OF OFFICE; ELECTION PROCEDURES

Subsection (b) of section 401 of the Senate bill contains a provision making it the duty of each union and its officers to comply with reasonable requests of candidates to distribute, at the candidates' expense, campaign literature to all members of the union, and to re-

frain from discrimination in favor of or against any candidate with respect to the use of lists of members. The Senate bill also requires that when a union or its officers authorize the distribution to members of campaign literature on behalf of any candidate or of the union itself, similar distribution shall be made by the union and its officers at the request of any other bona fide candidate, with equal treatment as to the expenses of the distribution. The duty so imposed could be enforced by civil action in the Federal courts.

The House amendment omits these provisions, but includes a provision giving every bona fide candidate the right to inspect and copy a list of the names and addresses of all members of the union who are subject to a union shop collective bargaining agreement, which list is to be maintained at principal office of the union.

The substitute agreed upon in conference contains both the provisions of the Senate bill and of the House amendment, except that the provisions from the House amendment are modified to deny candidates the right to copy membership lists and to restrict the right of candidates to inspect such lists to one time within 30 days of the election.

Subsection (d) of section 401 of the Senate bill requires that notice of a union election be mailed to the last known address of each member not less than 15 days before it is held. The House amendment provides that notice of a union election must be given in a manner which is reasonably calculated to inform substantially all of the members eligible to vote of the time and manner of making nominations and of the place and date of the election. Such notice would be given between the 45th and 15th day before the final day on which nominations could be made. The conference substitute accepts the Senate bill on this point.

Subsection (g) of section 401 of the proposed substitute accepts the provision of the Senate bill which permits, in union elections, union money to be used for factual statements of issues only if they do not involve candidates.

Subsection (h) of the conference substitute deals with removal of officers guilty of serious misconduct. The Senate bill provides that where the Secretary, upon application of a member of a local union, finds after a hearing that the constitution and bylaws of the local union do not provide an adequate procedure for the removal of an elected officer guilty of serious misconduct, such officer may be removed, for cause shown and after notice and opportunity for a hearing, by the members of the union voting in a secret ballot conducted by the officers in accordance with its constitution and bylaws insofar as they are not inconsistent with this title.

The House amendment provides a procedure which is similar, except that the Federal courts rather than the Secretary of Labor would determine whether the constitution and bylaws provide an adequate procedure for the removal of elected officers guilty of serious misconduct. The House amendment applies to all unions, not just to locals.

The conference substitute adopts the provisions of the Senate bill, and also the final subsection in the Senate bill which gives the Secretary the duty to make rules prescribing minimum standards and procedures for determining the adequacy of removal procedures.

**App. 49**

## SECTION 402—ENFORCEMENT

Subsections (a) and (b) of section 402 of the Senate bill provide that if a member of a union who has exhausted the remedies available under the constitution and bylaws of the union and its parent body (or has invoked such remedies without obtaining a final decision within 3 months) may file a complaint with the Secretary of Labor alleging a violation of section 401 (which includes a violation of the constitution and bylaws of the union pertaining to the election and removal of officers). The Secretary will investigate each such complaint, and if he finds probable cause to believe that a violation of the title has occurred and has not been remedied, he will bring a civil action against the union in a Federal district court to set aside the invalid election, if any, and to direct the conduct of an election (or hearing and vote upon the removal of officers) under the supervision of the Secretary of Labor. During the course of a proceeding under this section a challenged election will be presumed valid and the affairs of the union will be conducted during such period by the officers elected or in such other manner as its constitution and bylaws may provide. When a civil action is filed, the court will have power to take such action as it deems proper to preserve the union's assets.

The House amendment differs from the Senate bill in that the members of the union, instead of the Secretary, can bring the civil action, and, therefore, there would be no investigation by the Secretary.

The conference substitute is the same as the Senate bill on this point.

In subsection (c) of section 402, the conference substitute adopts the provision of the Senate bill that directs the court to set aside an election if the violation "may have" affected the outcome. Under the House amendment an election could be set aside only if the the violation did affect the outcome.

Subsection (d) of section 402 of the Senate bill would not permit the staying of an election during an appeal. The House amendment made this discretionary with the court. The conference substitute adopts the language of the Senate bill.

## SECTION 502—BONDING

The House amendment contains a provision which requires the bonding of certain labor union officials in an amount not less than 10 percent of the funds handled by them and their predecessors, if any, during the preceding fiscal year. The conference substitute adopts this provision of the House amendment, but, in addition, provides a maximum limitation so that no such official will be required to be bonded in an amount greater than $500,000.

## SECTION 503—LOANS TO OFFICERS OF LABOR ORGANIZATIONS

The Senate bill sets $1,500 as the maximum amount by which an officer or employee could be indebted to his union. The House amendment raised this amount to $2,500. The conference substitute sets this maximum at $2,000.

The House amendment provides that the penalty for violating this section should be a fine of not more than $10,000, or imprisonment for not more than 1 year, or both.  The conference substitute adopts the House amendment, except that the maximum fine is reduced to $5,000.

SECTION 504—PROHIBITION AGAINST CERTAIN PERSONS HOLDING OFFICE

The House amendment makes it a crime for a person to hold a union office for a prescribed period after he has been a Communist (or while he is a Communist) or after his conviction of certain offenses.  The conference substitute is the same as the House amendment, except that it adds a provision taken from the Senate bill which also makes it a crime for a labor organization or officer thereof to knowingly permit any person to assume or hold any office in violation of the section.  A provision has also been added to make it clear that the prohibitions apply regardless of whether the conviction which disqualifies occurred before or after the date of enactment of the act.

### SECTION 601—INVESTIGATIONS

The Senate bill contains a provision which directs the Secretary to conduct an investigation when he believes it necessary in order to determine whether any person has, or is about to, violate the act, or any rule or regulation authorized by the act.

The House amendment directs the Secretary to make an investigation when he has probable cause to believe that any person has violated a provision of the act, other than title I.

The conference substitute is similar to the Senate bill, except that the investigation authority is permissive rather than mandatory, no investigation may be made with respect to violations of rules and regulations, and the investigation authority does not extend to title I.

The Senate bill also contains a provision authorizing the Secretary to report to interested persons concerning the facts required to be shown in reports and concerning the reasons for failure or refusal to file a report or any other matter he deems appropriate as a result of an investigation.  The conference substitute adopts this provision.

### SECTION 611—SEPARABILITY PROVISIONS

The Senate bill provides that if any provision of the act, or its application to any person or circumstances, is held invalid the remainder of the act or the application of such provision to other persons or circumstances, shall not be affected thereby.  The House amendment merely provides that if any provision of the act is held invalid, the remainder thereof will not be affected.  The conference substitute adopts the provisions of the Senate bill.

### SECTION 701—FEDERAL-STATE JURISDICTION

The Senate bill provision relating to this subject amends the National Labor Relations Act, as amended, so as to provide that nothing in that act could be construed to prevent any State or territorial agency, other than a court, from exercising jurisdiction over all cases over which the Board has jurisdiction, but by rule or otherwise

**App. 51**

has declined to assert jurisdiction provided the State or territorial agency applies and is governed solely by Federal law as set forth in section 8(a) and 8(b) and section 9 of the National Labor Relations Act.

The House amendment contains a provision which authorizes the Board, in its discretion, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act to decline to assert jurisdiction over any labor dispute involving any class or category of employers, where in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction. The House amendment provides further that nothing in the National Labor Relations Act, as amended, shall be deemed to prevent or bar any agency or the courts of any State or territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands) from assuming and asserting jurisdiction over labor disputes over which the Board, in its discretion, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act declines to assert jurisdiction.

The substitute agreed upon in conference contains the House amendment with two modifications. The first modification provides that the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959. The second modification would amend section 3(b) of the National Labor Relations Act, as amended, to authorize the Board to delegate to its regional directors its powers under section 9 to determine the unit appropriate for the purpose of collective bargaining, to investigate and provide for hearings, and determine whether a question concerning representation exists, and to direct an election or take a secret ballot under subsection (c) or (e) of section 9 and certify the results of such election, except that upon the filing of a request therefor with the Board by any interested person, the Board may review any action of a regional director delegated to him under section 9, but such a review by the Board would not, unless specifically ordered by the Board, operate as a stay of any action taken by the regional director.

### SECTION 702—ECONOMIC STRIKERS

The Senate bill amends the second sentence of section 9(c)(3) of the National Labor Relations Act, as amended, to provide that employees on strike shall vote under such regulations as the National Labor Relations Board shall find to be consistent with the purposes and provisions of the act.

The House amendment amends that sentence by adding a proviso that in any lawful strike in which recognition was not an issue when the strike began, no direction of election pursuant to a petition filed after the commencement of the strike by any person other than the bargaining representative shall issue prior to the termination of such strike as determined by the Board or the expiration of a 6-month period from the commencement of the strike (or for a 12-month period if the petition is filed by an employer), whichever occurs sooner. Under this provision the Board of course, could limit this right to vote even during this 12-month period.

**App. 52**

38   LABOR-MANAGEMENT REPORTING AND DISCLOSURE ACT

The substitute agreed upon in conference amends the second sentence in section 9(c)(3) to provide that—

> Employees engaged in an economic strike who are not entitled to reinstatement shall be eligible to vote under such regulations as the Board shall find are consistent with the purposes and provisions of the National Labor Relations Act, as amended, in any election conducted within twelve months after the commencement of the strike.

### SECTION (704a)—BOYCOTTS

The House amendment contains provisions amending the secondary boycott provisions of section 8(b)(4) of the National Labor Relations Act, as amended. The Senate bill does not contain comparable provisions. The conference committee adopted the provisions of the House amendment with the following changes: (1) the phrase "or agree to cease" was deleted from section 8(b)(4)(B) because the committee of conference concluded that the restrictions imposed by such language were included in the other provisions dealing with prohibitions against entering into "hot cargo" agreements, and therefore their retention in section 8(b)(4)(B) would constitute a duplication of language; (2) a proviso was added which specified that for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary labor dispute and are distributed by another employer as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services at the establishment of the employer engaged in such distribution; (3) no language has been included with reference to struck work because the committee of conference did not wish to change the existing law as illustrated by such decisions as *Douds* v. *Metropolitan Federation of Architects* (75 Fed. Supp. 672 (S.D.N.Y. 1948)) and *NLRB* v. *Business Machine and Office Appliance Mechanics Board* (228 Fed. 2d 553); (4) the amendment adopted by the committee of conference contains a provision "that nothing contained in clause (B) of this paragraph (4) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing." The purpose of this provision is to make it clear that the changes in section 8(b)(4) do not overrule or qualify the present rules of law permitting picketing at the site of a primary labor dispute. This provision does not eliminate, restrict, or modify the limitations on picketing at the site of a primary labor dispute that are in existing law. See, for example, *NLRB* v. *Denver Building and Construction Trades Council, et al.* (341 U.S. 675 (1951)); *Brotherhood of Painters, Decorators, and Paper Hangers, etc.*, and *Pittsburgh Plate Glass Co.* (110 NLRB 455 (1954)); *Moore Drydock Co.* (81 NLRB 1108); *Washington Coca Cola Bottling Works, Inc.* (107 NLRB 233 (1953)).

**App. 53**

SECTION 704(b)—HOT-CARGO AGREEMENTS

The Senate bill amends section 8 of the National Labor Relations Act, as amended, by adding at the end thereof a new subsection (e) which makes it an unfair labor practice for any labor organization and any employer who is a common carrier subject to part II of the Interstate Commerce Act to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, or transporting any of the products of any other employer, or to cease doing business with the same.

The House amendment amends section 8 of the National Labor Relations Act, as amended, by adding at the end thereof a new subsection (e) to make it an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person. The House amendment also makes any such agreement heretofore or hereafter executed unenforcible and void.

The committee of conference adopted the House amendment but added three provisos. The first proviso specifies—

> that nothing in this subsection (e) shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work.

It should be particularly noted that the proviso relates only and exclusively to the contracting or subcontracting of work to be done at the site of the construction. The proviso does not exempt from section 8(e) agreements relating to supplies or other products or materials shipped or otherwise transported to and delivered on the site of the construction. The committee of conference does not intend that this proviso should be construed so as to change the present state of the law with respect to the validity of this specific type of agreement relating to work to be done at the site of the construction project or to remove the limitations which the present law imposes with respect to such agreements. Picketing to enforce such contracts would be illegal under the *Sand Door* case (*Local 1796, United Brotherhood of Carpenters* v. *NLRB*, 357 U.S. 93 (1958)). To the extent that such agreements are legal today under section 8(b)(4) of the National Labor Relations Act, as amended, the proviso would prevent such legality from being affected by section 8(e). The proviso applies only to section 8(e) and therefore leaves unaffected the law developed under section 8(b)(4). The *Denver Building Trades* case and the *Moore Drydock* cases would remain in full force and effect. The proviso is not intended to limit, change, or modify the present state of the law with respect to picketing at the site of a construction project. Restrictions and limitations imposed upon such picketing under present law as interpreted, for example, in the U.S. Supreme Court decision in the *Denver Building Trades* case would remain in full force and effect. It is not intended that the

App. 54

proviso change the existing law with respect to judicial enforcement of these contracts or with respect to the legality of a strike to obtain such a contract.

The second proviso specifies that for the purposes of this subsection (e) and section 8(b)(4) the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer," "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of a jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry.   This proviso grants a limited exemption in three specific situations in the apparel and clothing industry, but in no other industry regardless of whether similar integrated processes of production may exist between jobbers, manufacturers, contractors, and subcontractors.

The third proviso applies solely to the apparel and clothing industry.

SECTION (704C)—ORGANIZATIONAL AND RECOGNITION PICKETING

Both the Senate bill and the House amendment contain provisions which place certain restrictions on organizational and recognition picketing.   The committee of conference adopted a substitute provision, section 704(c), which amends the the National Labor Relations Act, as amended, to add a new section 8(b)(7), making it an unfair labor practice to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A) Where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under section 9(c) of this Act.

(B) Where within the preceding twelve months a valid election under section 9(c) of this Act has been conducted, or

(C) Where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c)(1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of or have a contract with a labor organization, unless an effect of such picketing

**App. 55**

is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

The final sentence to the proposed new section 8(b)(7) of the act provides that—

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under section 8(b) of the Act.

Section 8(b)(7) overrules the *Curtis* and *Alloy* cases to the extent that those decisions are inconsistent with section 8(b)(7).

### SECTION 705—BUILDING AND CONSTRUCTION INDUSTRY

The Senate bill amends section 8 of the National Labor Relations Act, as amended, to add a new subsection (e) which provides that it shall not be an unfair labor practice under subsections (a) and (b) of section 8 of that act, for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who upon their employment would be engaged) in the building and construction industry with a labor organization (not established, maintained, or assisted by any action defined in sec. 8(a) of the National Labor Relations Act, as amended, as an unfair labor practice) of which building and construction employees are members (1) where the majority status of such labor organization has not been established under the provisions of section 9 of the National Labor Relations Act, as amended, prior to the making of such agreement, (2) because such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment, or the effective date of the agreement, whichever was later, or (3) because such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) because such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area.  The Senate provision specifies, however, (1) that nothing in such provision shall set aside the final proviso to section 8(a)(3) of the National Labor Relations Act, as amended, and (2) that any agreement which would not be valid except for this amendment which permits an agreement to be entered into where the majority status of such labor organization has not been established under the provisions of section 9 of that act prior to the making of such agreement, shall not be a bar to a petition filed pursuant to section 9(c) or 9(e) of that act.  The Senate provision also specifies that nothing therein shall be construed as authorizing the execution of or application of agreements requiring membership in a labor organization as a condition of employment in any State or territory in which such execution or application is prohibited by State or territorial law.

**App. 56**

The conference adopted the provision of the Senate bill permitting prehire agreements in the building and construction industry. Nothing in such provision is intended to restrict the applicability of the hiring hall provisions enunciated in the *Mountain Pacific* case (119 N.L.R.B. 883, 893) or to authorize the use of force, coercion, strikes, or picketing to compel any person to enter into such prehire agreements.

Graham A. Barden,
Phil M. Landrum,
Frank Thompson, Jr.
Carroll D. Kearns,
William H. Ayres,
Robert P. Griffin,
*Managers on the Part of the House.*

○